**In re Marjorie R. YASHAR, Associate Judge of the Administrative Adjudication Court of the State of Rhode Island.**

No. 98–122–M.P.

Supreme Court of Rhode Island.

June 19, 1998.

John F. Dolan, Elizabeth Flynn Sullivan, Providence, for Petitioner.

J. Renn Olenn, Warwick, for Respondent.

Before WEISBERGER, C.J., and BOURCIER and FLANDERS, JJ.

## OPINION

PER CURIAM.

This is a petition for certiorari filed by Judge Marjorie R. Yashar (Judge Yashar), an associate judge of the Administrative Adjudication Court (AAC). Judge Yashar's petition challenges an order entered on December 29, 1997, by Chief Judge Vincent Pallozzi of the AAC. The order directed that Attorney Richard S. Humphrey (Humphrey) and members and associates of his law firm "shall not appear before the Honorable Marjorie Yashar in any hearings, trials or other matters." We issued a writ of certiorari to review this order and requested the parties to show cause why we should not rule summarily on Judge Yashar's petition. After reviewing the memoranda filed by the parties in support of and in opposition to the petition and after hearing oral argument, we conclude that no cause has been shown and that the issues raised can be resolved at this time.

The immediate factual background events for this dispute began on October 6, 1997. By a letter bearing that date, Humphrey wrote to Chief Judge Pallozzi, requesting that he enter a proposed form of order prepared by Humphrey that would exempt Humphrey and other members and associates of his law firm from appearing before Judge Yashar in any future AAC matters handled by his firm. The letter made reference to unspecified "circumstances that are already known to you" and stated that Humphrey's request was "due to the unsettling rulings issued during trial by Judge Yashar in the case styled *State of Rhode Island ex rel. Town of Scituate v. Frank Finn*, Summons No. 97–203–0346 Appeal No. B 97–0059." Humphrey was referring to a recently concluded AAC case in which an appellate panel of three AAC judges (including Chief

Judge Pallozzi) had reversed a judgment entered by Judge Yashar that Humphrey's client, Francis Finn (Finn), had illegally refused to submit to a breathalyzer test in violation of G.L.1956 § 31–27–2.1. The appeals panel concluded that Judge Yashar had acted arbitrarily in rejecting a police officer's testimony concerning the date of the incident (May 6, 1997) "without offering reasons for rejecting the testimony." Notwithstanding the officer's testimony, Judge Yashar had looked to the Law Enforcement Report (report) and to the Rights for Use at the Station form (form) to determine the date of the incident in question. Although the form indicated that the defendant was informed of his rights at the station and that he had refused to take the breathalyzer on May 5, 1997, the appeals panel concluded that this document was not probative in ascertaining the date of the charged incident because "[t]here is nothing in the document which establishes that the accident occurred on May 5, 1997." Because of the apparent evidentiary inconsistency in the date of the challenged conduct, the panel reversed Judge Yashar's order that upheld the breathalyzer-refusal charge against Humphrey's client.[1]

Humphrey enclosed a copy of the panel's decision in the *Finn* case with his October 6, 1997 letter to Chief Judge Pallozzi and asserted that his client had not been given a fair hearing in that case by Judge Yashar. He further claimed that the circumstances surrounding that case were "so extraordinary that I believe that it would be best for all involved—my clients, lawyers in my firm, me and Judge Yashar—that neither I nor my associates or members of my firm appear before Judge Yashar in the future."

After receiving this letter and another of the same tenor signed by Finn but prepared by Humphrey, Chief Judge Pallozzi conferred with Judge Yashar. Although Judge Yashar denied that she was biased against Humphrey, Chief Judge Pallozzi claimed that she initially agreed that it might be better for all concerned if she would recuse herself in the future from hearing any of Humphrey's AAC cases or those involving clients represented by his firm. Judge Yashar, however, denied that she ever agreed to Humphrey's request or offered to allow the entry of any such order as had been requested by Humphrey.

On December 19, 1997, Judge Yashar sent a letter to Chief Judge Pallozzi, with a copy to Humphrey, setting forth the grounds for her position that the Chief Judge should not and could not accede to Humphrey's request to bar her from sitting as a judge on all of Humphrey's future AAC cases. Her position was that Humphrey was free to raise her alleged bias against him by filing a recusal motion in any future individual AAC case in which he was involved as an attorney when she was the designated trial judge and to seek appellate review if he was dissatisfied with her decision in any respect. But Judge Yashar told Chief Judge Pallozzi that she did not believe that Humphrey should be allowed to obtain a blanket order from the Chief Judge that would effectively preclude her from serving as the trial judge on any and all AAC cases whenever Humphrey or a member of his law firm was an attorney of record.

On December 29, 1997, Chief Judge Pallozzi responded to Judge Yashar's December 19, 1997 letter. In his written response he again asserted his belief that Judge Yashar had previously agreed to Humphrey's request that he no longer be required to appear before her in AAC cases. He claimed that in light of Judge Yashar's earlier agreement to this request, he was completely surprised by her letter of December 19, 1997, which took the opposite position. Accordingly he advised Judge Yashar that as of December 29, 1997, he had signed an order "excusing Mr. Humphrey and members and associates of his law firm from appearing before you at any hearings, trials and other matters" at the AAC. It is this order that we have reviewed pursuant to the writ of certiorari previously issued.

We are of the opinion that Chief Judge Pallozzi erred in entering the challenged order for the following reasons:

---

1. Because the panel's decision in the *Finn* case is not before us, we express no opinion on the merits of the panel's ruling.

■ 1. The order in question was not a mere administrative or scheduling directive but was judicial in its origin, purpose, and effect. Humphrey's request was in essence a petition to the chief administrative judge of the AAC to have Judge Yashar disqualified from hearing any cases wherein Humphrey was serving as the attorney. Although Humphrey drafted the order in language that merely excused him and his associates from appearing in future AAC cases involving Judge Yashar, we conclude that, given the case-specific reasons why this directive was sought, the order was the legal equivalent of a ruling disqualifying Judge Yashar from hearing any of Humphrey's future AAC cases. Such a petition to disqualify or to recuse a judge because of the judge's alleged bias should be made in the first instance to the judge in question before or at trial and not to the chief administrative judge of the court. *See State v. Nidever*, 120 R.I. 767, 769, 390 A.2d 368, 369–70 (1978) ("[t]he customary manner in which one raises the issue of prejudice is by appropriate motion at trial, a motion for mistrial or for disqualification of the justice presiding").

■ 2. Thus, barring extraordinary circumstances not present here, a request to disqualify a judge or to excuse an attorney from appearing before a particular judge for reasons alleging the judge's bias toward the attorney should be made in a specific pending case, *id.*, and should not be couched as a blanket motion to disqualify the judge from sitting in all cases involving a particular attorney and/or that attorney's partners and associates.

■ 3. Although extraordinary bias against a lawyer can constitute sufficient grounds to disqualify a judge, "[g]enerally the only prejudice which will disqualify a judge, except for statutory disqualification for interest, is a personal prejudice for or against *a party to the cause.* * * * Ordinarily, [she] is not disqualified by prejudice or bias against the attorney of a party." *State v. Storms*, 112 R.I. 454, 456–57, 311 A.2d 567, 569 (1973). (Emphasis added.) And "the person alleging prejudice carries a substantial burden. * * * One asserting prejudice must establish that the actions of the trial justice were affected by facts and events which were not pertinent nor before the court." *Nidever*, 120 R.I. at 769–70, 390 A.2d at 370. Because Humphrey's blanket request to be excused from appearing before Judge Yashar in all future AAC cases involving his firm did not arise in the context of a specific pending case, there was no "party to the cause" against whom any personal prejudice could be alleged, much less proven.

■ 4. The undisputed fact that Judge Yashar had decided the case against Humphrey's client in the *Finn* proceeding could not serve to "establish affirmatively that the trial justice had personal bias or prejudice by reason of a preconceived or settled opinion of a character calculated to impair [her] impartiality seriously and to sway [her] judgment." *Cavanagh v. Cavanagh*, 118 R.I. 608, 621, 375 A.2d 911, 917 (1977). Merely because a judge has ruled adversely against a litigant does not show bias or prejudice on the part of the judge. *See In re Antonio*, 612 A.2d 650, 654 (R.I.1992). Indeed, even when personal animosity exists between a judge and an attorney for a client, recusal in a case involving the client is not compelled unless the attorney's client would thereby be adversely affected. *See In re Drexel Burnham Lambert, Inc.*, 861 F.2d 1307, 1314 (2nd Cir. 1988) ("bias against a lawyer, even if found to exist, without more is not bias against his client").

■ 5. In any event, even if these legal hurdles could be cleared, we are of the opinion that Chief Judge Pallozzi erred when he proceeded to grant Humphrey's request despite his knowledge of Judge Yashar's opposition thereto. Before Chief Judge Pallozzi entered the order in question, he was advised in writing that Judge Yashar objected to Humphrey's request. Thus even if Chief Judge Pallozzi was correct in believing that Judge Yashar had initially assented to Humphrey's request (a belief that he then communicated to Humphrey), Judge Yashar unambiguously advised Chief Judge Pallozzi of her opposition to Humphrey's request before the Chief Judge ever entered the order in question. Accordingly before entering the order, Chief Judge Pallozzi knew that this situation

had become a contested matter and that Humphrey and Judge Yashar were not in agreement about what should be done concerning this situation. In these circumstances, it was his clear obligation to refer Humphrey's request to Judge Yashar so that she might respond to it as a judicial question.

For the above-stated reasons the petition for certiorari is granted, the order of December 29, 1997, directing that Humphrey and members and associates of his law firm "shall not appear before the Honorable Marjorie Yashar in any hearings, trials or other matters" is quashed, and the papers in this case shall be remanded to the Administrative Adjudication Court with our decision endorsed thereon.

LEDERBERG and GOLDBERG, JJ., did not participate.