STATE

v.

**Mark D. SAMPSON.**

No. 2004–314–C.A.

Supreme Court of Rhode Island.

Oct. 31, 2005.

---

Lauren S. Zurier, Providence, for Plaintiff.

Paula Rosin, Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## O P I N I O N

Justice FLAHERTY, for the Court.

The defendant, Mark D. Sampson, appeals the Superior Court's judgment following a probation violation hearing. As grounds for this appeal, Sampson argues that the hearing justice erred when he denied a request for a continuance to se-cure new counsel, that the hearing justice should have recused, and that it was improper for the hearing justice to order Sampson to serve three years of his previously suspended sentence, because one of those years was founded on the justice's determination that Sampson had testified falsely at the hearing. On April 29, 2005, this Court ordered the parties to show cause why these issues should not summarily be decided. After considering the parties' arguments, we conclude that cause has not been shown and we proceed to decide this case at this time without further briefing or argument.

## I

### Facts and History

On June 26, 2002, Sampson pleaded *nolo contendere* to charges of breaking and entering and domestic assault. A Superior Court justice sentenced him to eight years, with nine months to serve and the remaining seven years and three months suspended, with probation. After Sampson had a domestic dispute with his ex-girlfriend on October 8, 2003, the state presented him as a violator pursuant to Rule 32(f) of the Superior Court Rules of Criminal Procedure. On February 9, 2004, Sampson appeared for a probation revocation hearing in Superior Court, but the hearing justice postponed the hearing for two days because the state's witnesses were not present.[1]

When Sampson's violation hearing ultimately commenced on February 11, 2004, Jon Lovoy, from the Office of the Public Defender, informed the hearing justice that Sampson wished to personally ad-

---

1. The prosecutor informed the court that the probation violation hearing previously had been delayed because Sampson resisted an interview with the public defender's office concerning his finances. He further stated that a previously scheduled hearing had been delayed because Elisa Catley, the complaining witness, had complications related to her pregnancy.

dress the court about a "technical issue." The hearing justice denied defendant's request because Sampson was represented by counsel; however, Sampson interjected that he had a conflict of interest with Lovoy. The hearing justice ordered him to sit, at which point Sampson became unruly. Sampson explained that "what I'm asking [Lovoy] to do, he doesn't want to do." After Sampson refused a further order to be seated, the hearing justice ordered him removed from the courtroom.

With Sampson outside the courtroom, Lovoy explained that his client believed that he had been improperly arraigned on charges arising from the domestic dispute. Lovoy explained to the hearing justice that he had refused to assert this argument because he was convinced that it was without merit, nor was it relevant to the violation hearing. The attorney also informed the hearing justice that Sampson was dissatisfied with Lovoy's representation, and further that Sampson objected to appearing before the hearing justice because the justice recently had presided over a jury trial involving Sampson's brother in which a guilty verdict had been returned.

After hearing Lovoy's objections, the hearing justice had Sampson returned to the courtroom, and allowed him to address the arraignment issue and further articulate his objections with respect to Lovoy's representation and the hearing justice's supposed conflict. Sampson explained that when Lovoy previously had represented his brother, "he didn't do his best job." After the defendant argued with the hearing justice, and again refused to sit at counsel table, the justice held Sampson in contempt and he was once again escorted

from the courtroom. After a short time, Sampson was returned to the courtroom and the hearing justice afforded him a brief recess to consider whether he would either continue with Lovoy as his attorney or represent himself. After pausing to confer with the attorney, Sampson informed the hearing justice that he was "all set." The hearing then commenced with Lovoy in place as Sampson's counsel.

The incident giving rise to Sampson's alleged probation violation stems from a domestic dispute with Elisa Catley, the complaining witness in this case.[2] Catley, a mother of five, and Sampson had had a turbulent, off and on relationship that had produced at least one child. Catley testified that on the evening of October 8, 2003, when she was six months pregnant, Sampson drove to her home to retrieve his belongings because the two recently had separated. In anticipation of Sampson's arrival, Catley set some, but not all, of his personal effects outside the door. However, when he arrived, Sampson claimed that he wished to retrieve his remaining property from inside the home. It his here that the stories of Sampson and Catley began to diverge.

According to Sampson, Catley willingly let him inside her home. He claimed that once he was inside, she began to scream at him, so he suggested that they go to the bedroom instead of arguing in front of the children. According to him, once they were in the bedroom, Catley began yelling in his face and "trying to grab [his] stuff" as he peacefully tried to collect his belongings, so he "kind of pushed her to the side."

---

**2.** Sampson's conviction on June 26, 2002, for breaking and entering and assault also involved a domestic dispute with Catley. As part of Sampson's sentence, he was ordered to have no contact with Catley. Sampson was arrested on February 26, 2003, for violating the no contact order, and, on March 13, 2003, Sampson was ordered to serve sixty days for violating his probation.

Catley's testimony depicted a strikingly different scene. She said that Sampson forced his way into her home. She also testified that rather than simply pushing her to the side, Sampson slapped her on the left side of her head, leaving her dizzy and unable to hear in her left ear, at which point she told him to leave. After he left, Catley called the South Kingstown police. Officer Montafix Houghton's testimony substantially corroborated Catley's version of events. He testified that when he arrived at Catley's home, she was trembling and crying, the left side of her face was red and swollen, and she was having difficulty hearing in her left ear. Officer Robert Costantino also testified that he met Catley at South County Hospital and observed that the left side of her face was red.

At the close of testimony, the hearing justice found that Sampson had violated the terms of his probation. He continued the hearing for sentencing, and the parties reconvened on March 4, 2004, for that purpose. In a "memorandum order,"[3] the hearing justice found that the state had presented credible evidence that Sampson was a violator. He also stated that he believed Sampson had lied during the hearing because Sampson's testimony contradicted Catley's corroborated testimony, which the hearing justice believed to be credible. The hearing justice sentenced Sampson to serve three years of his previously suspended sentence, explaining that one of the three years was attributable to Sampson's untruthful testimony at the hearing.

Sampson advances three arguments as grounds for this appeal. First, Sampson

urges that the hearing justice abused his discretion when he denied Sampson's request for a continuance to obtain new counsel. Second, Sampson maintains that the hearing justice should have recused due to a conflict of interest. Finally, Sampson contends that the hearing justice's belief that Sampson had testified untruthfully during the hearing was an improper basis for ordering him to serve an additional year of his previously suspended sentence. We consider each of his arguments below.

## II

## Standard of Review

■ "[T]his [C]ourt's review of a hearing justice's decision in a probation-violation proceeding is limited to considering whether the hearing justice acted arbitrarily or capriciously in finding a violation." *State v. Rioux*, 708 A.2d 895, 897 (R.I.1998) (citing *State v. Sparks*, 667 A.2d 1250, 1251–52 (R.I.1995)). "It is not the function of this [C]ourt to weigh the credibility of witnesses in a probation-violation hearing; that task is for the hearing justice to perform." *Id.*

## III

## Discussion

### A. Continuance for Substitution of Counsel

■ Sampson maintains that the hearing justice improperly denied his request for a continuance to obtain new counsel. At his hearing, Sampson told the hearing justice that he had a conflict with Lovoy because "[w]hat I'm asking him to do, he

---

**3.** This Court recently disapproved of courts issuing documents styled memorandum orders because this is not " 'a recognized title for a judicially authored document in our state court practice.' " *See Connecticut Valley*

*Homes of East Lyme, Inc. v. Bardsley,* 867 A.2d 788, 794 n. 7 (R.I.2005). However, we recognize that the hearing justice's order was issued before the above-cited case was published.

doesn't want to do." Specifically, Lovoy refused to raise an issue concerning the propriety of Sampson's arraignment because he believed the argument was without merit. Sampson also expressed dissatisfaction with Lovoy's previous representation of Sampson's brother on a felony charge. The hearing justice disagreed with Sampson's assessment of his court-appointed attorney, noting that "[Lovoy] does an outstanding job for his clients" and that he recently "gave the best final argument I have ever heard a defense counsel give."

■ It is well settled that a decision to grant or deny a defendant's request for a continuance to secure new counsel "is left to the sound discretion of the trial justice and will not be disturbed on appeal absent a clear abuse of discretion." *State v. Greene*, 726 A.2d 471, 472 (R.I.1999) (mem.) (citing *State v. Bleau*, 668 A.2d 642, 645 (R.I.1995)). This is especially true in a probation revocation hearing "where a defendant enjoys the right to counsel, but where due process rights are limited by virtue of the fact that the defendant has already been convicted of a crime." *Id.* (citing *State v. Desrosiers*, 559 A.2d 641, 643 (R.I.1989)). In *State v. Moran*, 699 A.2d 20 (R.I.1997), this Court outlined some of the factors that a trial justice should consider when a defendant requests a continuance:

"the promptness of the continuance motion and the length of time requested; the age and intricacy of the case; the inconvenience to the parties, witnesses, jurors, counsel, and the court; whether the request appears to be legitimate or merely contrived foot dragging; wheth-

er the defendant contributed to the circumstances giving rise to the request; whether the defendant in fact has other competent and prepared trial counsel ready to pinch-hit; whether there are multiple codefendants, making calendar control more difficult than usual; and any other relevant factor made manifest by the record." *Id.* at 26.

■ Sampson has not presented this Court with evidence that the hearing justice abused his discretion or failed to consider these factors.[4] Sampson's request was made after the hearing had begun, and a last-minute continuance would have been inconvenient for both the witnesses and the court. Officers Houghton and Costantino were both present to testify, as was Ms. Catley, a mother of five children with a two-week old infant. The legitimacy of Sampson's request is also questionable because he did not object to Lovoy's representation until Lovoy refused to assert an argument that he believed to be without merit. *Bustamante v. Wall*, 866 A.2d 516, 524 (R.I.2005) ("A defendant is entitled to appointment of an attorney with whom he can communicate reasonably, but has no right to an attorney who will docilely do as he is told.") (quoting *United States v. Moore*, 706 F.2d 538, 540 (5th Cir.1983)). Prior to his attorney's reluctance to placidly bow to his dubious instructions, Lovoy's competence was otherwise unquestioned by Sampson.

The public defender appointed to represent defendant in this case was experienced and highly competent. He and the other attorneys in the Public Defender's office are state employees who dedicate

---

4. Although we have given the benefit of the doubt to Sampson, we are not convinced that he properly preserved his objection to going forward with Mr. Lovoy's representation. As set forth above, the hearing justice allowed the defendant to confer with Lovoy after in-

forming him that he could be represented by the attorney or go forward *pro se*. After huddling with Lovoy, Sampson told the hearing justice that he was "all set," a comment which, in our opinion, does not convey a continuing objection.

themselves to indigent defense. We are of the opinion that it is both unreasonable and unfair to the taxpayers to be expected to underwrite the fees of private counsel based upon a defendant's unsupported conjecture about the competence or dedication of the public defender.[5]

Based on the foregoing, we are satisfied that the hearing justice did not abuse his discretion in denying Sampson's requested continuance.

## B. Recusal of Hearing Justice

■ Sampson further asserts that the hearing justice erred when he declined to recuse because he recently had presided over the jury trial of Sampson's brother. During the hearing, the prosecutor mistakenly referred to Sampson using his brother's first name and, according to Sampson, it is "not hard to imagine" that the hearing justice also may have had difficulty distinguishing Sampson from his brother. Sampson also contends that "it is not beyond the realm of possibility" that the recent conviction of his brother affected the hearing justice's assessment of defendant's own credibility.

■ While the existence of bias or prejudice on behalf of a justice is proper grounds for recusal, the person seeking recusal bears the burden of establishing a lack of real or apparent impartiality. *In re Antonio*, 612 A.2d 650, 653 (R.I.1992). A defendant's subjective feelings and unsupported accusations are not sufficient grounds for recusal. *See State v. Lessard*, 754 A.2d 756, 759 (R.I.2000) (mere accusations insufficient to require recusal); *State v. Clark*, 423 A.2d 1151, 1158 (R.I.1980) (subjective feelings of defendant are not

proper test for disqualification of a justice). Rather, the defendant carries a "substantial burden" of demonstrating that the justice is "affected by facts and events which were not pertinent nor before the court." *In re Yashar*, 713 A.2d 787, 790 (R.I.1998) (quoting *State v. Nidever*, 120 R.I. 767, 769–70, 390 A.2d 368, 370 (1978)).

Although Sampson contends that it is "not hard to imagine" and "not beyond the realm of possibility" that his brother's conviction may have influenced the hearing justice, imagination and possibility are not the proper standards for establishing bias or prejudice. Because Sampson has failed to meet the burden of establishing facts and events that draw the hearing justice's impartiality into question, we affirm the hearing justice's decision not to recuse.

## C. Length of Sentence

■ As a final ground for this appeal, Sampson argues that the hearing justice erred when he ordered him to serve three of the years remaining on his sentence because one of the three years was based on the justice's finding that Sampson testified untruthfully at the violation hearing.[6] It does not appear from the record that this issue was properly raised below. However, even if we accept that Sampson properly raised and preserved the issue for appeal, his argument on this issue would be unavailing. A hearing justice has "wide latitude in deciding whether a probation violator's suspended sentence should be removed in whole, in part, or not at all." *State v. Tucker*, 747 A.2d 451, 454 (R.I.2000). We therefore reject Sampson's argument and affirm the decision of the hearing justice ordering the defendant to

5. As noted above, the hearing justice had high praise for the public defender in this case.

6. The hearing justice stated "I'm vacating three years of the previously imposed sus-

pended sentence * * *. I would indicate to Mr. Sampson that a year of that three years probably is tenable to his conduct of committing perjury before this Court."

serve three years of his previously imposed sentence.

## IV

### Conclusion

Based on the foregoing, the judgment of the Superior Court is affirmed and the papers in this case are remanded to the Superior Court.