Douglas J. PELLETIER

v.

STATE.

Nos. 2006–214–C.A., 2007–298–C.A.

Supreme Court of Rhode Island.

March 20, 2009.

1238

Plaintiff, pro se.

Aaron L. Weisman, Providence, for Defendant.

Present: GOLDBERG, Acting C.J., FLAHERTY, SUTTELL, ROBINSON, JJ., and WILLIAMS, C.J. (ret.).

## OPINION

Chief Justice WILLIAMS (ret.), for the Court.

After a motion justice denied the applicant, Douglas J. Pelletier's application for postconviction relief, he appealed *pro se* to this Court, arguing that the motion justice erred in failing to find ineffective assistance of counsel. He also appealed the length of his sentence as determined by the trial justice. This case came before the Supreme Court for oral argument on March 3, 2009, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that this appeal may be decided at this time without further briefing or argument. For the reasons hereinafter set forth, we affirm the judgment of the Superior Court.

## I

### Facts and Travel

The applicant is before this Court for the second time on appeal, after the motion justice denied his application for postconviction relief with respect to the alleged ineffective assistance of counsel on the part of applicant's attorney in connection with applicant's *nolo contendere* plea to eight felony counts. The facts underlying these counts and the instant appeal are as follows.

In the early hours of January 13, 1989, applicant entered the Portsmouth, Rhode Island, home of Ruth Smith.[1] Ruth was asleep in her bedroom; meanwhile, her daughter, Eileen, and Ruth's son, Harold, were sleeping in an upstairs bedroom.

1. The names of the victims and their family members have been changed.

The applicant entered Ruth's bedroom, and she awoke when applicant straddled her on the bed, while holding one hand over her mouth. When Ruth resisted, he showed her a knife. He then used the knife to cut the pillow case into pieces, which he later used to gag her mouth and to tie her hands behind her back. After tying her up, applicant forcibly performed oral sex on Ruth; he penetrated her vaginally; he penetrated her anally; and then he penetrated her vaginally again.

The applicant next went upstairs, where he woke up Eileen, showed her his knife, and told her that he had her mother downstairs. The applicant put the knife to Eileen's back and later against her throat, all the while leading her downstairs to her mother's bedroom. At this point applicant made several threats to kill Eileen. Eventually applicant cut Ruth loose and allowed her to attend to Harold and get him ready for school. Before letting Ruth out of his sight, however, he cut the telephone wires so she could not call the police. While Ruth was with Harold, applicant told Eileen he was going to rape her, threatened to put a urine-soaked rag in her mouth, and tied her wrists to her ankles. Before he could follow through on his threat to rape Eileen, several police officers arrived because Ruth had escaped to a neighbor's house and telephoned 911.

Upon their arrival, officers from the Portsmouth Police Department discovered applicant in a downstairs bedroom with Eileen; applicant was holding a knife to Eileen's throat and threatening to kill her and himself. The officers trained their weapons on applicant and asked him to let Eileen go; he refused. Eventually Eileen was able to push applicant's hand a short distance from her throat, at which point applicant lunged at Det. Bradley J. Mello. After a struggle, three officers were able to handcuff and detain applicant.

The applicant ultimately was charged with and pleaded *nolo contendere* to three counts of first-degree sexual assault, one count of second-degree sexual assault, assault with a dangerous weapon, assault with intent to commit murder, breaking and entering without consent, and assault with a dangerous weapon. In the hearing held on January 8, 1990, at which applicant pleaded *nolo contendere* and signed a plea agreement with respect to these eight felony counts, the hearing justice and applicant engaged in a colloquy in which applicant acknowledged that he understood the nature of his plea and agreed that the facts as presented by the state were sufficient for him to be convicted. In total, applicant was sentenced to sixty years to serve and fifteen years suspended, with probation.

More than thirteen years later, applicant filed a *pro se* application for postconviction relief, alleging four grounds for relief: (1) he did not enter the plea knowingly or voluntarily because he was unaware of the amount of time he would be required to serve; (2) he did not admit all of the elements of all of the offenses with which he was charged; (3) he did not understand that a *nolo contendere* plea was the functional equivalent of a guilty plea; and (4) his attorney had failed to inform him about the possibility of a diminished capacity defense. When his application first was heard, the motion justice granted the application only with respect to resentencing. However, when the state appealed, this Court vacated the order for resentencing, explaining that applicant's sentence was neither illegal nor unconstitutional and that therefore the motion justice erred in ordering him to be resentenced. *See Pelletier v. State*, 882 A.2d 567, 569 (R.I.2005) (*Pelletier I* ).

After the record was remanded to the Superior Court, applicant renewed his request to have his application for postcon-

viction relief heard on the merits. He sought to have the issues that had been raised in his original application, but which had not been ruled upon in the first hearing, be decided in a new hearing before the same motion justice. Although applicant never filed a second application for postconviction relief, the motion justice treated this request as such an application.

A hearing was held on December 2, 2005, at which the motion justice heard testimony about whether applicant had received ineffective assistance of counsel. The applicant's attorney, who had represented him during the plea negotiations, testified at the hearing and explained that he was not aware of any psychiatric problems that applicant suffered and explained that "the totality of the evidence against [applicant] was so overwhelming that it would have been foolhardy for [him] to go to trial and subject [him]self to two consecutive life sentences." He testified that applicant's desire to raise a diminished capacity defense at trial was "untenable in light of the totality of the circumstances and the status of the law at that time." He further explained: "And if I thought there was a snowball's chance in hell of your beating this case, okay, should you go to trial, I would have told you. Because part of my job as a defense lawyer is to limit your exposure. Okay? You had no defense in this case. Whether it was psychiatric, diminished capacity, you had none. Okay? That's why you pled guilty." Finally, applicant's attorney testified that both he and the motion justice had explained the difference between pleas of *nolo contendere,* guilty, and not guilty before applicant signed the plea agreement. Moreover, he noted that applicant "very effectively indicated to both [counsel and the motion justice] that [applicant] understood the rights [he was] waiving."

The motion justice issued a written decision denying applicant's application for postconviction relief. She summarily dismissed applicant's assertion that he had received ineffective assistance of counsel because of the length of his sentence, citing this Court's 2005 ruling in applicant's first appeal. In addressing applicant's additional allegations of ineffective assistance of counsel, the motion justice concluded that there was "absolutely no credible evidence in [the] record to support, or even suggest, any claim of ineffective assistance of counsel." After she denied applicant's second application for postconviction relief, applicant appealed.

## II

### Analysis

On appeal, applicant argues that the motion justice erred in failing to grant his application for postconviction relief. The applicant suggests two grounds for relief: (1) he received ineffective assistance of counsel and (2) the length of his sentence was excessive.

### A

#### Standard of Review

 The right to seek postconviction relief "is a statutory right available to a convicted defendant who contends that his original conviction or sentence violated rights afforded to him under the state or federal constitution." *Chalk v. State,* 949 A.2d 395, 398 (R.I.2008). In reviewing a motion for postconviction relief, this Court applies a deferential standard with respect to the motion justice's findings of fact. *Moniz v. State,* 933 A.2d 691, 694 (R.I. 2007) (citing *Burke v. State,* 925 A.2d 890, 892 (R.I.2007)). The findings of the trial justice hearing the application for postconviction relief "are entitled to stand undisturbed on review in the absence of clear

error or a showing that material evidence was overlooked or misconceived." *State v. Dufresne,* 436 A.2d 720, 722 (R.I.1981). However, we will conduct a *de novo* review with respect to "any postconviction relief decision involving questions of fact or mixed questions of law and fact pertaining to an alleged violation of an applicant's constitutional rights." *Chalk,* 949 A.2d at 398 (quoting *Burke,* 925 A.2d at 892–93).

## B

### Ineffective Assistance of Counsel

■ The applicant avers that he received ineffective assistance of counsel when his attorney allowed him to plea *nolo contendere* to eight felony counts, which resulted in a sixty-year cumulative sentence.

■■ It is well settled that this Court will review allegations of ineffective assistance of counsel pursuant to the two-part test set forth by the United States Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See, e.g., Moniz* 933 A.2d at 696; *Burke,* 925 A.2d at 893; *Kholi v. Wall,* 911 A.2d 262, 264 (R.I.2006) (all applying *Strickland* ). Accordingly, to prevail on an allegation of ineffective assistance of counsel, the following two criteria must be met.

> "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it can-

not be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052.

■ The applicant has the burden of proving the alleged instance or instances of ineffective assistance of counsel. *State v. D'Alo,* 477 A.2d 89, 91 (R.I.1984). This hurdle is considerable because, when reviewing such allegations, this Court will reject a claim of ineffective assistance of counsel "unless the attorney's representation [was] so lacking that the trial has become a farce and a mockery of justice * * *." *Moniz,* 933 A.2d at 696 (quoting *State v. Dunn,* 726 A.2d 1142, 1146 n. 4 (R.I.1999)).

Upon reviewing the transcript from the postconviction-relief hearing, in which applicant's defense attorney testified, we conclude that applicant received effective assistance of counsel. The record demonstrates that applicant's attorney thoroughly was convinced that the best route for applicant was to plead *nolo contendere.* This proposal certainly was based, in large part, on his experience as a criminal defense attorney. As the motion justice pointed out, "[A]t the time the plea was entered [applicant's counsel] was a public defender with twenty-one years experience who had tried forty to fifty cases. He was then, and remains, a defense attorney well-respected by bench and bar for his skill, intelligence, integrity and dedication to the best interests of his clients." The applicant's attorney had reviewed the facts of the case, including police and witness statements; he had conferred with applicant's previous attorneys; and, based on his more than twenty years experience defending criminal cases, he made a reasoned decision to suggest that applicant enter *nolo contendere* pleas rather than go

to trial and risk a far longer prison sentence.

After reviewing the record, and particularly the colloquy between applicant and the motion justice, we are satisfied that applicant made a knowing and intelligent *nolo contendere* plea and that this plea was taken after receiving appropriate advice from his attorney. This Court is unable to perceive any evidence that applicant was deprived of effective counsel at the time he entered his plea. The applicant was faced with extremely serious charges, and there was overwhelming evidence against him. There was a great likelihood that applicant could have received a much more severe sentence had he risked going to trial. Indeed, the state was prepared to recommend consecutive life sentences if applicant had gone to trial and was convicted.

 We conclude, therefore, that the applicant has not satisfied the first part of the *Strickland* test because he has failed to demonstrate that his attorney's performance had been deficient. We need not proceed any further with our analysis. We affirm the judgment of the Superior Court.[2]

### Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court. The record shall be remanded to the Superior Court.

---

**2.** With respect to applicant's allegation that his sentence was excessive, we refuse to consider the legality of the sentence because this precise issue was addressed and decided by this Court in *Pelletier v. State*, 882 A.2d 567, 569 (R.I.2005) (*Pelletier I*). In *Pelletier I*, we specifically determined that the hearing justice erred in ordering resentencing. *Id.* at

568. The doctrine of res *judicata* clearly bars this Court from resolving issues that already have been raised and decided in a previous proceeding. *Carrozza v. Voccola*, 962 A.2d 73, 78 (R.I.2009). Accordingly, we reject applicant's contention and affirm the judgment of the motion justice.