DECISION
Petitioner Joseph Perry is before this Court on his application for post-conviction relief pursuant to G.L. 1956 § 10-9.1-1. Mr. Perry claims that the trial justice assigned to criminal court Case No. P1/94-0686A had an obligation to recuse himself, and that Mr. Perry received ineffective assistance of counsel. Mr. Perry's claims are based on the fact that the trial justice represented Mr. Perry almost two decades earlier in a Family Court matter. The facts of this case center on a conversation which took place in the Providence County Superior Court cell block in 1995 or 1996 wherein Mr. Perry allegedly informed his attorney that he had previously been represented by the trial justice.
 I. Travel
In 1995, Mr. Joseph Perry and his cousin, David Perry were tried before Justice Needham on several counts.[1] Although Joseph Perry was found guilty on the assault with a deadly weapon and conspiracy charges, the jury was deadlocked on the homicide count. The two Perry cousins received a second trial before Mr. Justice Sheehan on the homicide count in 1998. After several days of trial, Joseph Perry was found guilty of murder and sentenced to a term of life *Page 2 
imprisonment. Notably, Mr. Perry does not presently question whether he committed the homicide[2], nor does he suggest that Justice Sheehan remembered Mr. Perry.
 II. Findings of Fact
Justice Sheehan, prior to his appointment to the Superior Court, represented Joseph Perry at two separate judicial proceedings in the Rhode Island Family Court in 1978 and 1980 when Mr. Perry was between 16 and 18 years old. In one of these instances, Mr. Perry had been charged with delinquency resulting from an alleged armed robbery of a drug store in Rumford, Rhode Island. During the period preceding his appointment to the bench, Justice Sheehan maintained an extensive criminal defense practice and represented countless clients.
Joseph Perry proceeded to the re-trial of the 1998 homicide and conspiracy charges before Mr. Justice Sheehan in 1998. During these proceedings, he was represented by Attorney Robert Mann. No conflict or alleged conflict was ever brought to the attention of Mr. Justice Sheehan. No conflict was ever disclosed on the record, nor was a mistrial requested for Judge Sheehan's former representation of Mr. Perry. Mr. Perry did not ask his attorney to tell the Judge of the alleged conflict. Mr. Perry did not object to Justice Sheehan presiding over the trial. Mr. Perry was convicted of murder in the first degree. Four years later, in 2002 he instituted this action for post-conviction relief. Judge Sheehan passed away in 2002. Mr. Perry's co-defendant, David Perry, also passed away several years ago. *Page 3 
 III. Discussion of Evidence
Mr. Perry requests several other findings of fact. This Court, after reviewing all of the evidence and testimony before it, is unable to make the findings. In particular, Mr. Perry suggests that he had a conversation with his attorney, Attorney Mann, in the cellblock of the Providence County Courthouse during the trial. Mr. Perry alleges that in this conversation, he informed Attorney Mann that Justice Sheehan represented him in the past. However, this Court cannot reach this finding of fact. Although Attorney Mann delivered a thorough and complete testimony, he had no recollection of this important event. Both Mr. Perry and Thomas Gatone — another individual professing that he was in the cell block at the time of the alleged conversation — presented testimony which was neither convincing nor credible.
Mr. Gatone's testimony was not credible. During his testimony, the Court found Mr. Gatone's demeanor, coupled with his contradiction of the dates of the alleged conversation, to severely impinge upon his credibility. After it was suggested that his timeline was incorrect, Mr. Gatone's own words were, "I can't remember day by day." Therefore, it was difficult to ascertain whether the alleged conversation with Attorney Mann occurred during the trial, before the sentencing, or at some other time. Given Mr. Gatone's lack of credibility, the Court cannot find that he witnessed any such conversation.
The Court did not find Mr. Perry credible. Not only was Mr. Perry's testimony completely self-serving, but he continually changed what happened when. Following his conviction, Mr. Perry filed an appeal with our Supreme Court in October of 1998. His appeal was heard and denied in 2001. Mr. Perry filed his original application for post conviction relief in March of 2002. This original application made no mention of Justice Sheehan's prior representation of Mr. Perry. It was not until amended applications were filed on March 17, 2005, *Page 4 
seven years after his conviction, that Mr. Perry brought this issue to light. The amended application asserts that Mr. Perry disclosed Justice Sheehan's representation to Attorney Mann during pre-trial conversations. However, the testimony of both Mr. Perry and Mr. Gatone sharply conflict with the petition's timeline. The two witnesses apparently assert that the conversation wherein Attorney Mann was allegedly informed of Justice Sheehan's prior representation of Mr. Perry would have occurred, if at all, during the trial itself or shortly before the sentencing.
Attorney Mann testified during the course of the post-conviction trial. He carefully selected his words, and clearly attempted to recall the events of 12 years ago. The Court found Attorney Mann highly credible. While the counselor displaced an obligation of loyalty to his client, he answered questions directly, out of a commitment to his oath. Attorney Mann recalled Mr. Perry's case, but did not recall any discussion of a conflict regarding Justice Sheehan's prior representation of Mr. Perry. Attorney Mann credibly testified that when a conflict is suspected he routinely discusses that conflict at length with the client. Given the length and significance of Mr. Perry's trial, Attorney Mann testified that, had there been such a conflict, he would have had an in-depth discussion with Mr. Perry at a location outside of the courthouse cell block. During that conversation, the attorney and the client would discuss the strategic options and decide whether or not to disclose the potential conflict to the judge and whether to ask the judge to recuse himself. Attorney Mann does not recall having any such conversation or having been informed of an alleged conflict by Mr. Perry at this trial.
For all of the foregoing reasons, this Court is unable to find that Mr. Perry and Attorney Mann discussed Justice Sheehan's prior representation of Mr. Perry in the cell block of the Providence County Courthouse during Mr. Perry's trial. Similarly, the evidence before this *Page 5 
Court does not lead to a finding that such a conversation took place between Mr. Perry and Attorney Mann at any time or any place, prior to Mr. Perry's sentencing.
The Court also finds no showing that Mr. Justice Sheehan was influenced by, or even knew that, he represented Mr. Perry some twenty years earlier. There has been no showing in the record that Mr. Justice Sheehan acted with any prejudice, malice, or predisposition against Mr. Perry. Nor does it appear that Mr. Justice Sheehan even recognized that there was a possible conflict. Even Mr. Perry acknowledges that, as far as he knew, Justice Sheehan had no idea that he once represented Mr. Perry.
 III. Analysis
"Pursuant to § 10-9.1-1, the remedy of postconviction relief is available to any person who has been convicted of a crime and who thereafter alleges either that the conviction violated the applicant's constitutional rights or that the existence of newly discovered material facts requires that, in the interest of justice, the conviction be vacated." Thornton v. State,948 A.2d 312, 316-16 (R.I. 2008). "[A]n applicant for postconviction relief must bear "the burden of proving, by a preponderance of the evidence, that postconviction relief is warranted in his or her case." Page v. State, ___ A.2d ___,2010 WL 2099293 (R.I., May 26, 2010).
A. Ineffective Assistance of Counsel
Mr. Perry claims that he was deprived of effective assistance of counsel because, after he allegedly informed Attorney Mann of his prior connection to Justice Sheehan, no appropriate action was taken by the attorney. The "benchmark issue [in an ineffective assistance of counsel claim] is whether counsel's conduct so undermined the proper functioning of the adversarial *Page 6 
process that the trial cannot be relied on as having produced a just result." Young v. State, 877 A.2d 625, 629 (R.I. 2005) (internal quotation omitted). "It is well settled that this Court will review allegations of ineffective assistance of counsel pursuant to the two-part test set forth by the United States Supreme Court in Strickland v. Washington,466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052 (1984)."Pelletier v. State, 966 A.2d 1237, 1241 (R.I. 2009).
During the first prong of the Strickland test, "an applicant must demonstrate `that counsel's performance was deficient, to the point that the errors were so serious that trial counsel did not function at the level guaranteed by the Sixth Amendment.'"Page, ___ A.2d ___, 2010 WL 2099293 at *6 (quotingBrennan v. Vose, 764 A.2d 168, 171 (R.I. 2001)). Before moving to the next part of the test, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Washington v. State,989 A.2d 94, 99 (R.I. 2010) (quoting Strickland,466 U.S. at 687). "It should also be borne in mind that `a strong (albeit rebuttable) presumption exists that counsel's performance was competent.'" Page, ___ A.2d ___,2010 WL 2099293 at *6 (quoting Gonder v. State,935 A.2d 82, 86 (R.I. 2007)).
If the first prong of the Strickland test is satisfied, the court proceeds to the second step wherein "the applicant must demonstrate that the `deficient performance was so prejudicial to the defense and the errors were so serious as to amount to a deprivation of the applicant's right to a fair trial.'"Id. (quoting Brennan, 764 A.2d at 17). "Under [this] prong, the defendant must demonstrate that counsel's objectively unreasonable performance caused a `reasonable probability that the result of the proceeding would have been different.'"Washington, 989 A.2d at 99 (R.I. 2010) (quotingStrickland, 466 U.S. at 687).
When undergoing the Strickland test, "the applicant has the burden of proving the alleged instance or instances of ineffective assistance of counsel." Pelletier,966 A.2d at 1241 (R.I. 2009) *Page 7 
(citing State v. D'Alo, 477 A.2d 89, 91 (R.I. 1984)). "[U]nless a defendant satisfies both prongs of the Strickland test, it cannot be said that the conviction or sentence resulted from a breakdown in the adversary process that renders the result unreliable." Page, ___ A.2d ___,2010 WL 2099293 at *6 (internal quotation omitted). Our High Court has indicated that a claim of ineffective assistance of counsel must be rejected "unless the attorney's representation was so lacking that the trial has become a farce and a mockery of justice."Pelletier, 966 A.2d at 1241 (R.I. 2009) (internal quotation omitted).
Mr. Perry failed to meet his burden to establish both prongs of the Strickland test. Based on the testimony and evidence presented, this Court cannot find that Mr. Perry informed Attorney Mann of his prior encounters with Justice Sheehan. Moreover, Attorney Mann convincingly testified that he routinely discusses such substantial conflicts at length with clients before making a decision. As the basis for his ineffective assistance of counsel argument, Mr. Perry claims Attorney Mann failed to take appropriate action once he was informed of the possibility that the trial justice was prejudiced.[3] There is no credible evidence that Mr. Perry ever informed Attorney Mann of his previous relationship with Justice Sheehan. Having failed to prove this threshold factual issue, Mr. Perry is not able to satisfy the first prong of the Strickland test. Because there is no credible evidence showing that he was ever informed that the trial justice previously represented Mr. Perry, this Court is unable to find that Attorney Mann's "performance was deficient[] to the point that the errors were so serious that [he] did not function at the level guaranteed by the Sixth Amendment."Page, ___ A.2d ___, 2010 WL 2099293 at *6 (quotingBrennan v. Vose, 764 A.2d 168, 171 (R.I. 2001)). Mr. Perry "has the burden of *Page 8 
proving the alleged instance or instances of ineffective assistance of counsel," and has failed to do so. Pelletier,966 A.2d at 1241 (R.I. 2009) (citing State v. D'Alo,477 A.2d 89, 91 (R.I. 1984)). This Court concludes Mr. Perry was provided with effective assistance from his attorney during his trial. Thus, this claim is not an appropriate basis for post-conviction relief.
B. Recusal
Mr. Perry claims that Justice Sheehan should have acted suasponte and recused himself from presiding over Mr. Perry's trial. Article VI, Canon 3E of the Supreme Court Rules of Judicial Conduct addresses the disqualification of a justice and provides in part that:
 1. A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:
 (a) the judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of disputed evidentiary facts concerning the proceeding;
"The customary manner in which one raises the issue of prejudice is by appropriate motion at trial, by a motion for mistrial, or by a motion for disqualification of the justice presiding." State v.D'Amario, 568 A.2d 1383, 1385 (R.I. 1990) (internal citation omitted). See also Yates v.Wall, 973 A.2d 621, 623 (R.I. 2009). As has previously been discussed, there is no credible evidence before this Court showing that Mr. Perry took any action tantamount to seeking the recusal of Justice Sheehan. There is no evidence (not even a suggested inference) that Justice Sheehan recalled Mr. Perry. Nevertheless, Mr. Perry argues that Justice Sheehan should have recused himselfsua sponte.
The pertinent case law does not reveal an obligation to recuse. "But before we will require a trial justice to recuse himself or herself to avoid the appearance of impropriety, facts *Page 9 
must be `elicited indicating that it is reasonable for members of the public or a litigant or counsel to question the trial justice's impartiality.'" State v. Lessard,754 A.2d 756, 759 (R.I. 2000) (quoting State v. Clark,423 A.2d 1151, 1158 (R.I. 1980)). "A defendant's subjective feelings and unsupported accusations are not sufficient grounds for recusal."State v. Sampson, 884 A.2d 399, 405 (R.I. 2005) (internal citations omitted). "[R]ecusal is not in order by a mere accusation that is totally unsupported by substantial fact."Lessard, 754 A.2d at 759 (quoting Clark,423 A.2d at 1158).
Here, no conflict or alleged conflict was brought to the attention of Mr. Justice Sheehan. No conflict was ever disclosed on the record, nor was a mistrial requested for Judge Sheehan's former representation of Mr. Perry. If Mr. Perry recalled the interaction at the time, he did nothing about it. There has been no showing that Justice Sheehan even knew of a potential conflict. This Court cannot and will not draw any inference that Justice Sheehan would remember representing Mr. Perry nearly twenty years before the trial. While "judicial officers are obligated to recuse if they are unable to render a fair or an impartial decision in a particular case," Mattatall v.State, 947 A.2d 896, 902 (R.I. 2008) (internal quotation omitted), logic would suggest that the Court would not be impartial if it did not recall Mr. Perry. Common sense tells us that a judge should not recuse if he does not recall the individual. Justice Sheehan had no duty to recuse himself from presiding over Mr. Perry's trial. Thus, this claim is not an appropriate basis for post-conviction relief. *Page 10 
C. Laches
Laches is an appropriate defense in a post-conviction relief action.[4] In the case at bar, Mr. Perry was convicted in 1998, and his Supreme Court appeal was denied in 2001. He originally filed his application for post-conviction relief in March of 2002. However, Mr. Perry did not raise the recusal and ineffective assistance of counsel issues until filing his amended application on March 17, 2005, nearly seven years after his conviction. It seems that any alleged prejudicial concerns would have been an immediate concern for him in 1998, and he should have been raised seasonably. Waiting seven years may have hampered the State in establishing a murder charge now. However, as the State did not raise the defense of laches, nor introduce any evidence demonstrating that it would be prejudiced in presenting the case again[5], the Court will not base its ruling on the issue.
 III. Conclusion
The Court finds no convincing evidence showing that Mr. Perry informed his attorney that the Trial Justice may have potentially been impartial. Moreover, this Court was presented *Page 11 
with no evidence that could lead to a conclusion that Justice Sheehan remembered that he had previously represented Mr. Perry. Thus, Mr. Perry's ineffective assistance of counsel and recusal arguments are unsuccessful. The Petitioner's application for post-conviction relief is therefore denied.
[1] Joseph Perry received jury trials in each case.
[2] During his testimony on April 6, 2010, Mr. Perry admitted to committing the homicide.
[3] This argument is based on the specious premise that the trial justice was prejudiced. There is absolutely nothing in the record to indicate that Justice Sheehan recalled Mr. Perry, so of course there is no evidence demonstrating the justice was partial in conducting the trial. Justice Sheehan's esteemed career as an attorney and justice remains intact.
[4] The Court held in Araujo v. State, P.M. No. 09-0004, February 12, 2010, 2010 WL 581512:
 The Rhode Island Supreme Court recently determined-citing to other appellate courts that have held accordingly-that the doctrine of laches can apply to an application for post-conviction relief. Raso v. Wall, 884 A.2d 391, 394 (R.I. 2005) (construing § 10-9.1-3 language that application may be filed at any time to mean any reasonable time). See also Baxter v. State, 636 N.E.2d 151, 152-53 (Ind. Ct. App. 1994) (determining defendant should have brought post-conviction application within reasonable time of-rather than seven years after-learning of its availability twenty-seven years after his conviction). This Court will grant the laches defense if the State proves beyond a preponderance of the evidence that "the applicant unreasonably delayed in seeking relief and that the state is prejudiced by the delay." Id. at 396. The two requirements of laches are therefore "negligence to assert a known right, seasonably coupled with prejudice to an adverse party." Rodriques v. Santos, 466 A.2d 306, 311 (R.I. 1983). See also Rampal v. Rhode Island, P.M. No. 08-1394, April 30, 2010.
[5] However, there is an obvious likelihood that the Plaintiff's delay in moving this petition toward trial worked to his advantage, as both David Perry and Justice Sheehan are now deceased.