AMENDED DECISION
On December 18, 1991, Fernando Lora pled nolo contendere to a charge of unlawful delivery of cocaine. He now attempts to vacate that plea alleging that the advice that he received from his attorney, concerning immigration, was inaccurate. The matter is before the Court on his application for post-conviction relief pursuant to G.L. 1956 § 10-9.1-1. After trial, for the reasons set forth herein, Mr. Lora's petition for post-conviction relief is denied.
 I. Findings of Fact
On December 18, 1991, Mr. Lora pled nolo contendere to a charge that he delivered cocaine in Woonsocket on July 12, 1991. He was represented by Attorney John Cicilline at a bail hearing and at preliminary plea negotiations. Mr. Lora was represented by another attorney from the same firm for the plea hearing. Mr. Lora executed plea forms in English and Spanish, and his plea was accepted by a Superior Court justice with the assistance of an interpreter. He was sentenced to a seventy-two month sentence with five months to serve and sixty-seven months of probation. *Page 2 
Mr. Lora discussed some immigration consequences with his counsel prior to his plea. He was under the impression that he would have no problems with immigration, though it is unclear what his attorney said to him. Mr. Lora was in the United States illegally.
In December 1991, Mr. Lora was released from the Adult Correctional Institutions, pursuant to the terms of his sentence. In an apparent violation of his sentence, he never reported to probation. He moved to Massachusetts and used a different last name. On July 20, 1992, a warrant issued for the arrest of Mr. Lora. In 1997, Mr. Lora, using a different name, applied for and received a permanent resident card.[1] In 2009, when returning into the United States from a foreign trip, he was detained. He was refused re-entry and returned to the Dominican Republic where he remains.
 II. Travel
Mr. Lora applied for post-conviction relief in June 2009. He seeks relief pursuant to Rhode Island General Laws, Chapter 10-9.1.
This case was first reached for trial in January of 2010. As indicated, Mr. Lora had been refused re-entry into the United States, and now resides in the Dominican Republic. When counsel sought to introduce his testimony, video testimony in open court was attempted. The internet connection was poor and after the interpreter, stenographer and Court were unable to understand Mr. Lora, the trial was recessed. In July 2010, the trial was restarted. Without objection, Mr. Lora was allowed to testify via a deposition transcript.[2] No other witnesses testified. *Page 3 
 III. Legal Standard
"Pursuant to § 10-9.1-1, the remedy of postconviction relief is available to any person who has been convicted of a crime and who thereafter alleges either that the conviction violated the applicant's constitutional rights or that the existence of newly discovered material facts requires that, in the interest of justice, the conviction be vacated." Thornton v. State,948 A.2d 312, 316-16 (R.I. 2008). "[A]n applicant for postconviction relief must bear `the burden of proving, by a preponderance of the evidence, that postconviction relief is warranted in his or her case.'" Page v. State, ___ A.2d ___,2010 WL 2099293 (R.I., May 26, 2010). Implications for post-conviction relief are civil in nature. Ferrell v. Wall,889 A.2d 177 (R.I. 2005).
Mr. Lora claims that he was deprived of effective assistance of counsel because he was not informed of all immigration consequences prior to his nolo contendere plea. The "benchmark issue [in an ineffective assistance of counsel claim] is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Young v. State, 877 A.2d 625, 629 (R.I. 2005) (internal quotation omitted). "It is well settled that this Court will review allegations of ineffective assistance of counsel pursuant to the two-part test set forth by the United States Supreme Court in Strickland v. Washington,466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052 (1984)."Pelletier v. State, 966 A.2d 1237, 1241 (R.I. 2009).
During the first prong of the Strickland test, "an applicant must demonstrate `that counsel's performance was deficient, to the point that the errors were so serious that trial counsel did not function at the level guaranteed by the Sixth Amendment.'"Page, ___ A.2d ___, 2010 WL 2099293 at *6 (quotingBrennan v. Vose, 764 A.2d 168, 171 (R.I. 2001)). Before moving to the next part of the test, "the defendant must show that counsel's representation fell below an *Page 4 
objective standard of reasonableness." Washington v. State,989 A.2d 94, 99 (R.I. 2010) (quoting Strickland,466 U.S. at 687). "It should also be borne in mind that `a strong (albeit rebuttable) presumption exists that counsel's performance was competent.'" Page, ___ A.2d ___,2010 WL 2099293 at *6 (quoting Gonder v. State,935 A.2d 82, 86 (R.I. 2007)). A single instance of failure or omission by counsel is unlikely to meet the threshold. Instead, Rhode Island courts look at "the entire performance of counsel, and when that performance is deficient in a number of respects, then the possibility is greater that an accumulation of serious shortcomings prejudiced the defendant to a sufficient degree to meet theStrickland requirement. Brown v. State,964 A.2d 516, 528-529 (R.I. 2009) (citing Heath v. Vose,747 A.2d 475, 479 (R.I. 2000)).
If the first prong of the Strickland test is satisfied, the court proceeds to the second step wherein "the applicant must demonstrate that the `deficient performance was so prejudicial to the defense and the errors were so serious as to amount to a deprivation of the applicant's right to a fair trial.'"Id. (quoting Brennan, 764 A.2d at 17). "Under [this] prong, the defendant must demonstrate that counsel's objectively unreasonable performance caused a `reasonable probability that the result of the proceeding would have been different.'"Washington, 989 A.2d at 99 (R.I. 2010) (quotingStrickland, 466 U.S. at 687).
When undergoing the Strickland test, "the applicant has the burden of proving the alleged instance or instances of ineffective assistance of counsel." Pelletier,966 A.2d at 1241 (R.I. 2009) (citing State v. D'Alo,477 A.2d 89, 91 (R.I. 1984)). "[U]nless a defendant satisfies both prongs of the Strickland test, it cannot be said that the conviction or sentence resulted from a breakdown in the adversary process that renders the result unreliable." Page, ___ A.2d ___,2010 WL 2099293 at *6 (internal quotation omitted). Our High Court has indicated that a claim of ineffective assistance of counsel must be rejected "unless the attorney's representation was so lacking that *Page 5 
the trial has become a farce and a mockery of justice."Pelletier, 966 A.2d at 1241 (R.I. 2009) (internal quotation omitted).
 IV. Analysis A. Mr. Lora Produced Scant Proof
At trial Mr. Lora called only one witness, himself. Although his only claim is that he received deficient legal advice from his attorney prior to his plea, he did not attempt to call any of the attorneys who represented him.[3] Much of the testimony at Mr. Lora's deposition was hearsay: what Attorney Cicilline allegedly told him in 1991. The State promptly objected to this testimony at the deposition and renewed those objections at trial. There is no reason to believe that Attorney Cicilline was unavailable to testify at trial. While some of the testimony was admitted only to establish Mr. Lora's state of mind, most of it was not. The Court is not convinced, at all, that Mr. Cicilline made the representations that Mr. Lora alleges he made in 1991. This Court does not find Mr. Lora credible on these issues. Accordingly, the findings of facts set forth above are extremely limited.
 B. Change of Deportation Law
Mr. Lora based his petition on the alleged failure of his attorney to advise him on the immigration consequences of his plea. Several months ago, the United States Supreme Court ruled that an attorney's incorrect advice to his client concerning the immigration consequences *Page 6 
of a prospective plea could result in that plea being vacated.Padilla v. Kentucky, ___ U.S. ___,176 L.Ed.2d 284, 130 S.Ct. 1473 (March 31, 2010). The High Court reasoned that such advice may show that a defendant did not receive reasonable professional assistance of a competent counsel. Before that bridge is crossed, however, Mr. Lora needed to lay a foundation. First, he has failed to demonstrate what advice, if any, counsel rendered to him. Secondly, he must establish how that advice is incorrect. In this case, Mr. Lora failed to do either.
As discussed above, Mr. Lora's testimony was extremely limited. He attempted to testify, often using hearsay upon hearsay, quoting individuals and attempting to quote individuals from what they said to him over eighteen years ago. The Court found much of his attempted testimony to be pure hearsay, and queried whether or not the testimony would be reliable at all. Therefore, the Court had little, if anything, to demonstrate what advice was given by Mr. Cicilline in 1991.
Assuming that Mr. Lora had demonstrated that Mr. Cicilline advised him that there would be no immigration consequences to the plea — which Mr. Lora DID NOT establish — Mr. Lora still failed to meet his burden of proof. Mr. Lora was sentenced in 1991 under a very different immigration policy. Justice Stevens, in the Padilla majority decision, discussed the significant differences in immigration law before 1996.
 While the 1917 Act was "radical" because it authorized deportation as a consequence of certain convictions, the Act also included a critically important procedural protection to minimize the risk of unjust deportation: At the time of sentencing or within 30 days thereafter, the sentencing judge in both state and federal prosecutions had the power to make a recommendation "that such alien shall not be deported." This procedure, known as a judicial recommendation against deportation, or JRAD had the effect of binding the Executive to prevent deportation; the statute was "consistently . . . interpreted as giving the sentencing judge conclusive authority to decide whether a particular conviction should be disregarded as a basis for deportation." *Page 7 
 * * * [T]he JRAD procedure was generally available to avoid deportation in narcotics convictions.
 * * * However, the JRAD procedure is no longer part of our law. Congress first circumscribed the JRAD procedure in the 1952 Immigration and Nationality Act (INA), and in 1990 Congress entirely eliminated it. In 1996, Congress also eliminated the Attorney General's authority to grant discretionary relief from deportation, an authority that had been exercised to prevent the deportation of over 10,000 non-citizens during the five year period prior to 1996. Under the contemporary law, if a non-citizen has committed a removable offense after the 1996 effective date of these amendments, his removal is practically inevitable but for the possible exercise of limited remnants of equitable discretion vested in the Attorney General to cancel removal for non-citizens convicted of particular classes of offenses.
 * * * These changes to our immigration law have dramatically raised the stakes of a non-citizen's criminal conviction. Padilla, pp. 1478-1480 (citations and footnotes omitted).
Mr. Padilla was convicted on October 4, 2002, well after the 1996 Congressional changes had been made. SeeCommonwealth of Kentucky v. Padilla,253 S.W.3d 482, 483 (Ky., 2008). Mr. Padilla filed his post-conviction relief request on August 18, 2004. In other words, Mr. Padilla was always subject to the stricter deportation policy, rather than the policy of which applied to Mr. Lora. According to the majority decision in Padilla, had Mr. Lora served his sentence it is unlikely that he would have been deported. Mr. Lora was deported when he failed to appear for probation, when he left the Rhode Island jurisdiction, when he applied for a resident alien card using a different name, after a Rhode Island warrant was issued and when he traveled out of the country and then attempted to return. All of these circumstances are quite unique. Mr. Lora skirted the law in each circumstance and, by his doing, became subject to laws and policies that were not in effect at the time of his sentencing. To expect an attorney to counsel a client on laws not yet enacted, is simply not reasonable. *Page 8 
 C. Laches
The Rhode Island Supreme Court recently determined — citing to other appellate courts that have held accordingly — that the doctrine of laches can apply to an application for post-conviction relief. Raso v. Wall, 884 A.2d 391, 394 (R.I. 2005) (construing § 10-9.1-3 language that application may be filed at any time to mean any reasonable time). This Court will grant the laches defense if the State proves beyond a preponderance of the evidence that "the applicant unreasonably delayed in seeking relief and that the state is prejudiced by the delay." Id. at 396. The two requirements of laches are therefore "negligence to assert a known right, seasonably coupled with prejudice to an adverse party."Rodriques v. Santos, 466 A.2d 306, 311 (R.I. 1983); seealso Rampal v. R.I., PM No. 08-1394 (April 30, 2010);Araujo v. State, PM No. 090-0004 (Feb. 12, 2010).
The State did not submit evidence that the delay in a new trial of this action would prejudice the State's criminal case. While it may be possible to make such an inference where the conviction was nineteen years ago, the Court will not reach the issue as Mr. Lora did not meet his burden of proof in his case in chief.
 V. Conclusion.
For the reasons stated, Mr. Lora's petition for post-conviction relief is denied.
[1] In his testimony, the Petitioner identified himself as Fernando Aria. He testified that he applied for a permanent residency card under the name Fernando Alexander Aria Sanchez (Lora deposition, pp. 5, 27).
[2] Although the deposition was apparently videotaped, the Court was only provided with the stenographic record which is admitted as an exhibit herein.
[3] Mr. Lora's counsel at the post-conviction trial indicated that an attempt was made by his local counsel to contact Attorney Cicilline. Attorney Cicilline represented Mr. Lora in 1991, and allegedly provided the questionable advice. Mr. Lora's post-conviction trial counsel indicated that Attorney Cicilline recalled nothing of this plea so was never called as a witness. (This was triple hearsay.) The attorney who represented Mr. Lora at the post-conviction relief trial was an out-of-state attorney admitted pro hac vice. He was admitted on the motion of a local counsel who did not attend the trial.