John MONIZ

v.

STATE of Rhode Island.

No. 2006–211–Appeal.

Supreme Court of Rhode Island.

Oct. 25, 2007.

692

Martin D. Harris, for Plaintiff.

Aaron L. Weisman, Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Chief Justice WILLIAMS, for the Court.

The applicant, John Moniz (applicant or Moniz), appeals the denial of his application for postconviction relief in the Superior Court. This case came before the Supreme Court for oral argument on September 25, 2007, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and examining the record and memoranda filed by the parties, we are of the opinion that this appeal may be decided at this time without further briefing or argument. For the reasons hereinafter set forth, we affirm the ruling of the Superior Court.

### I

### Facts and Travel

After receiving several confidential tips that Moniz was selling narcotics in the Town of Bristol, the Bristol Police Narcotics Division spent several weeks gathering information on and maintaining surveillance of Moniz. On November 30, 1996, two Bristol police officers observed Moniz behaving in a manner that indicated a narcotics transaction was about to take place. Moniz was in his car in a store parking lot where he appeared to be waiting for someone. The two officers placed Moniz under surveillance in the parking lot

for approximately eighteen minutes and observed that he did nothing but drive in a circular manner. The officers indicated in their police report that this behavior clearly indicates that a narcotics transaction is about to take place. Based upon this information, as well as their previous surveillance of Moniz, the officers ordered Moniz to get out of his vehicle. After searching Moniz's vehicle, the officers found one bag of a substance they believed was marijuana. The officers arrested Moniz and processed him at police headquarters. After the officers informed Moniz of his *Miranda*[1] rights, Moniz provided them with a statement in which he acknowledged that the bag was indeed his.

In December 1996, a criminal information charged that on November 30, 1996, Moniz unlawfully possessed marijuana with intent to deliver, in violation of G.L. 1956 § 21–28–4.01, and operated a motor vehicle while knowingly having marijuana in it, in violation of G.L.1956 § 31–27–2.4. Moniz plead *nolo contendere,* and in 1997 he was convicted of possession of marijuana with intent to deliver. In exchange for this plea, the state dismissed the charge of operating a vehicle while knowingly having marijuana in it. The trial justice sentenced defendant to a five-year suspended sentence with probation.

Several years later, in September 2005, Moniz filed the instant application for postconviction relief. At the hearing, applicant argued that the toxicology report relied upon was erroneous and that, as a result, Moniz did not enter a voluntary and intelligent waiver of his constitutional rights. Specifically, applicant explained that the toxicology report contained in the criminal information package provided to him before he entered his *nolo* plea was dated

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

October 24, 1996. Hence, the testing of the contraband predated the actual offense date by slightly more than one month.[2]

Additionally, applicant asserted that he received ineffective assistance of counsel and that the trial justice should have advised him of the immigration consequences of his *nolo contendere* plea.[3] The magistrate denied Moniz's application for postconviction relief. Moniz subsequently appealed the magistrate's decision to a Superior Court justice based on Superior Court Administrative Order No. 94–12. After Moniz reiterated the arguments set forth before the magistrate, the motion justice decided that although the toxicology report was defective, there were other ways to prove the elements of the offense. Accordingly, the motion justice denied Moniz's appeal of the magistrate's decision and denied Moniz's application for postconviction relief. Moniz timely appealed.

## II

### Analysis

On appeal, Moniz argues that both the magistrate and the motion justice erred in failing to grant his application for postconviction relief. Moniz suggests three grounds for relief. First, Moniz asserts that because the criminal information package predated his conviction, his *nolo contendere* plea was not voluntary and intelligent. Further, Moniz argues that he received ineffective assistance of counsel and that the trial justice did not properly inform him of the immigration consequences of the *nolo contendere* plea. In turn, the state rebuts each argument and contends that the magistrate and the mo-

tion justice properly denied Moniz's application for postconviction relief. Specifically, the state argues that Moniz's plea was indeed voluntary and intelligent and that Moniz waived his right to contest the factual basis of the charge. Additionally, the state maintains that Moniz received effective assistance of counsel, and that the immigration consequences were not material; it also contends that the magistrate did not have a duty to inform Moniz of any such consequences.

### A

### Standard of Review

■■■■ When this Court reviews a ruling on an application for postconviction relief, we afford great deference to the motion justice's findings of fact. *Burke v. State*, 925 A.2d 890, 892 (R.I.2007). Thus, absent clear error or a determination that the motion justice neglected or misconceived the evidence, this Court will uphold a postconviction relief decision. *Reise v. State*, 913 A.2d 1052, 1055 (R.I.2007). However, this Court reviews *de novo* any determination pertaining to whether a defendant's constitutional rights have been infringed. *Burke*, 925 A.2d at 892–93. An applicant must prove, by a preponderance of the evidence, that he is entitled to postconviction relief. *Id.* at 893.

### B

### Voluntary and Intelligent Nature of Plea

■■■■ The main issue on appeal is whether defendant entered a voluntary and intelligent *nolo contendere* plea. "In

---

**2.** The toxicology report pertained to an earlier incident in which the Bristol Police Department investigated Moniz for possession of marijuana.

**3.** Moniz is a native of Portugal. When he tried to reenter the United States after visiting the Azores, deportation proceedings were instituted against him because of his status as an aggravated felon.

Rhode Island, a nolo plea is equivalent to a plea of guilty." *State v. Feng*, 421 A.2d 1258, 1266 (R.I.1980). Thus, when a defendant enters a plea of *nolo contendere*, the defendant "waives several federal constitutional rights and consents to judgment of the court." *Id.* (quoting *Johnson v. Mullen*, 120 R.I. 701, 706, 390 A.2d 909, 912 (1978)). *See also State v. Williams*, 122 R.I. 32, 38–39, 404 A.2d 814, 818 (1979) (By pleading guilty or *nolo contendere*, a defendant "waiv[es] [the] right[ ] to a trial by jury, the presumption of innocence, the privilege against self incrimination, and the rights to confront and cross-examine her accusers, to testify and to call witnesses in her own defense, to be proven guilty beyond a reasonable doubt and to appeal a conviction to this court."). Accordingly, when this Court accepts a *nolo contendere* plea, we must determine that the defendant has entered the plea both voluntarily and intelligently. *Feng*, 421 A.2d at 1266.

▇▇▇ The Superior Court codified the procedures for assuring the constitutional requirement that a guilty or *nolo contendere* plea be voluntary and intelligent in Rule 11 of the Superior Court Rules of Criminal Procedure. *Feng*, 421 A.2d at 1266–67. Rule 11 states, in relevant part, that a court "shall not accept * * * a plea of nolo contendere without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea." Pursuant to Rule 11's mandate, the court must conduct "an on-the-record examination of the defendant before accepting [the] plea [in order] to determine if the plea is being made voluntarily with an understanding of the nature of the charge and the consequences of the plea." *State v. Frazar*, 822 A.2d 931, 935 (R.I.2003) (quoting *Ouimette v. State*, 785 A.2d 1132, 1136 (R.I.2001)).

The trial court must engage the defendant in an extensive inquiry to demonstrate on the record that the defendant understood the nature of the charges and the consequences of his plea. *Feng*, 421 A.2d at 1267. Although Rule 11 does not specify the extent or content of the colloquy, the record and the circumstances in their totality must demonstrate to a reviewing court that the defendant's plea was voluntary and intelligent. *Feng*, 421 A.2d at 1267.

Having reviewed the record, we conclude that the trial justice's colloquy with Moniz was thorough and that the court properly entered the *nolo contendere* plea. The trial justice established that Moniz had completed high school and did not have any difficulty reading, writing, or understanding English. Moniz also said that he understood the terms of his plea agreement. The trial justice then directed the prosecutor to recite what facts the state was prepared to prove if the matter went to trial.

"The Judge: I'll ask you to listen as a representative of [the] Attorney General's office describes for this Court exactly what it is the State of Rhode Island would stand ready to prove if this case were in fact to proceed to trial. When he concludes, I'll be asking you [Moniz] whether or not you are in substantial agreement with the statement that he is about to make. Mr. Page?

"Mr. Page: In the matter of the State of Rhode Island versus John Moniz if that matter were to proceed to trial, your Honor, the State would prove that on 30 November 1996 in Bristol that Mr. Moniz did unlawfully possess with an intent to deliver a controlled substance; that substance being marijuana.

"The Judge: Mr. Moniz, are you in substantial agreement with that statement?

"John Moniz: Yes, your Honor."

The trial justice clearly explained the charges, and the prosecutor provided Moniz with the factual basis for the charge.[4] The applicant acknowledged, on the record, that he did engage in the charged unlawful activities. Thus, the mere fact that the state's toxicology report was erroneous does not persuade us that Moniz's plea was not voluntary and intelligent. Rather, what is persuasive is that Moniz, who at all times was represented by counsel, knowingly admitted to the charges. By entering the *nolo contendere* plea, Moniz voluntarily waived his rights.

Indeed, as the motion justice noted, an intelligent plea does not necessarily mean that the plea is wise. Rather, it indicates that defendants are aware of the consequences of their pleas. Therefore, viewing the record as a whole, we conclude (1) that the court fully satisfied Rule 11's requirement by determining that Moniz understood the nature of the charges and (2) that the court entered a voluntary and intelligent plea of *nolo contendere.*

## C

### Ineffective Assistance of Counsel

■■■ The applicant's second contention in support of his application for post-conviction relief is that he received ineffective assistance of counsel when his counsel did not discover the erroneous toxicology report. In Rhode Island, allegations of ineffective assistance of counsel are reviewed pursuant to the two—part test set forth in the United States Supreme Court case of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Burke,* 925 A.2d at 893.

"First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052.

The United States Supreme Court in *Strickland* declined to provide more specific guidelines for determining effective assistance of counsel, requiring only that counsel's assistance be "reasonable considering all the circumstances." *Id.* at 688, 104 S.Ct. 2052. The Supreme Court also opined that a court's examination of counsel's performance should be highly deferential, and it noted that the examining court should disregard hindsight and focus instead on counsel's conduct from counsel's perspective at the time of the conduct in question. *Id.* at 689, 104 S.Ct. 2052.

■■■ This Court will reject an allegation of ineffective assistance of counsel "unless the attorney's representation [was] so lacking that the trial has become a farce and a mockery of justice * * *." *State v. Dunn,* 726 A.2d 1142, 1146 n. 4 (R.I.1999) (quoting W.M. Moldoff, Annotation, *Incompetency of Counsel Chosen by Accused as Affecting Validity of Conviction,* 74

4. Moniz also contends that his *nolo contendere* plea lacked a factual basis. We believe that the motion justice properly concluded that the defective toxicology report was not an indispensable piece of evidence. Indeed, there were other ways to prove Moniz's guilt, namely the colloquy between Moniz and the trial justice in which he admitted to committing the offense.

A.L.R.2d 1390, 1397 (1960)). Thus, unless a defendant can demonstrate that counsel's "advice was not within the range of competence demanded of attorneys in criminal cases," an allegation of ineffective assistance of counsel will fail. *Miguel v. State,* 774 A.2d 19, 22 (R.I.2001).

At the outset, Moniz has not met the first prong of the *Strickland* test. Moniz's counsel acted well within the level of competence demanded of attorneys in criminal cases. The applicant's counsel's actions do not rise to the level of rendering counsel's representation a "'mockery of justice.'" *Dunn,* 726 A.2d at 1146 n. 4. Neither the state nor Moniz's counsel noticed that the toxicology report was from a date earlier than Moniz's arrest. Even assuming, however, that Moniz satisfied the first prong, counsel's error does not appear to have prejudiced the defense. As discussed *supra,* even without the erroneous toxicology report, the state provided a factual basis for Moniz's plea. Accordingly, it does not appear that the outcome would have been different absent the alleged deficient efforts of Moniz's counsel.

### D

### Immigration Consequences

 Lastly, applicant argues that the hearing justice erred in denying his application for postconviction relief because the trial justice did not properly advise him of the immigration consequences of his plea. General Laws 1956 § 12–12–22(b) requires the court to advise a defendant of any immigration consequences resulting from a plea of guilty or *nolo contendere* before accepting a plea. Yet, the General Assembly did not enact this law until July 6, 2000, more than three years after Moniz's plea, which was entered in April 1997. *See Tavarez v. State,* 826 A.2d 941, 944 (R.I. 2003). At that time, the trial justice was not obligated to advise Moniz of any possible immigration consequences. Our case law is clear that § 12–12–22(b) does not carry any retroactive effect. *Id.* (citing *Wilkinson v. State Crime Laboratory Commission,* 788 A.2d 1129, 1141 (R.I. 2002) (explaining that statutes will not, absent "'clear, strong language' or 'necessary implication' be applied retrospectively")).

Furthermore, we have held that "[t]he possibility of deportation is only a collateral consequence [of a plea] because that sanction is controlled by an agency which operates beyond the direct authority of the trial [justice]." *State v. Desir,* 766 A.2d 374, 376 (R.I.2001) (quoting *State v. Alejo,* 655 A.2d 692, 692 (R.I.1995) and *State v. Figueroa,* 639 A.2d 495, 499 (R.I.1994)). Nevertheless, the trial justice provided Moniz with a fair warning that his plea could have immigration consequences.[5] Therefore, because § 12–12–22(b) does not apply to the *instant* matter and because the trial justice provided Moniz with a fair warning that his *nolo contendere* plea could have immigration consequences, we affirm the motion justice's decision denying Moniz's application for postconviction relief.

### Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court. The

---

5. The relevant portion of the trial transcript reads:

"The Judge: Mr. Moniz, are you an American citizen?
"John Moniz: No, I'm not, your Honor.

"The Judge: Are you aware that by entering a plea of nolo contendere to a felony charge that there is always the possibility that this could lead to your deportation? Are you aware of that.
"John Moniz: No, I am, your Honor."

record shall be remanded to the Superior
Court.