Nilsa RODRIGUES (a/k/a
Juana Rodriguez)[1]

v.

STATE of Rhode Island.

No. 2007–345–Appeal.

Supreme Court of Rhode Island.

Dec. 18, 2009.

---

1. The record indicates that applicant's legal name is Juana Rodriguez.

Angel Tavares, Esq., for Plaintiff.

Jane M. McSolely, Department of Attorney General, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, and ROBINSON, JJ.

## OPINION

Justice GOLDBERG, for the Court.

The applicant, Juana "Nilsa" Rodrigues (applicant or Rodrigues) appeals from the denial of her application for postconviction relief in the Superior Court. For the reasons that follow, we reject the applicant's assertions of legal error and affirm the judgment of the Superior Court.

## Facts and Travel

On November 6, 1993, a mere twelve days after arriving in Rhode Island from Puerto Rico, Rodrigues was arrested by Middletown police while delivering fourteen grams of heroin and seven grams of cocaine to an undercover detective. She subsequently was charged by criminal information with delivery of both heroin and cocaine, as well as two counts of conspiracy to violate the Uniformed Controlled Substances Act, G.L.1956 chapter 28 of title 21, by delivering heroin and cocaine. On March 14, 1994, she was provided with court-appointed counsel from the Office of the Public Defender.

Rodrigues originally attempted to enter a plea of *nolo contendere* to the charges, with an agreed-upon disposition. However, during the plea colloquy, on April 7, 1994, the trial justice refused to accept a plea of *nolo contendere* and indicated that he would accept only a guilty plea. The applicant agreed and did plead guilty. In accordance with the agreement, Rodrigues was sentenced to ten years in prison, with one year to serve and nine years suspended, with probation. She served nine months of her prison sentence at the Adult Correctional Institutions and the remaining three months in home confinement.

Almost thirteen years later, under G.L. 1956 § 10–9.1–1,[2] Rodrigues filed an appli-

---

2. General Laws 1956 § 10–9.1–1 provides in pertinent part:

"(a) Any person who has been convicted of, or sentenced for, a crime, a violation of law, or a violation of probationary or deferred sentence status and who claims: (1) That the conviction or the sentence was in violation of the constitution of the United States or the constitution or laws of this state; * * * may institute, without paying a

cation for postconviction relief, alleging, *inter alia,* ineffective assistance of counsel and that her plea was neither knowing, voluntary, nor intelligent. On July 3, 2007, the hearing justice issued a written decision denying relief on all grounds. A timely notice of appeal to this Court followed.

Additional facts will be supplied as necessary.

## Analysis

Before this Court, applicant argues that the hearing justice erred in denying her application for postconviction relief and asserts several grounds for appeal. However, we shall only address the two arguments we deem relevant.[3] The applicant alleges that her conviction should be vacated because the plea colloquy failed to comply with Rule 11 of the Superior Court Rules of Criminal Procedure, and thus was not a knowing, voluntary, or intelligent waiver of her rights. Additionally, Rodrigues argues that she received ineffective assistance of counsel because her attorney did not adequately investigate her case or review potentially exculpatory evidence. Furthermore, applicant contends that counsel failed to inform her about potential immigration consequences resulting from the plea.[4] We deem applicant's arguments without merit and affirm the judgment of the Superior Court.

### A. Standard of Review

■■■ "Post-conviction relief is available to any person in this state pursuant to G.L.1956 chapter 9.1 of title 10, who after having been convicted of a crime, claims, '*inter alia,* that the conviction violated [his or her] constitutional rights * * *.'"

*Powers v. State,* 734 A.2d 508, 513–14 (R.I. 1999) (quoting *Mastracchio v. Moran,* 698 A.2d 706, 710 (R.I.1997)); *see also Pelletier v. State,* 966 A.2d 1237, 1240 (R.I.2009). When this Court reviews a ruling on an application for postconviction relief, we afford great deference to the hearing justice's findings of fact. *Moniz v. State,* 933 A.2d 691, 694 (R.I.2007). We will uphold a postconviction relief decision absent clear error or a determination that the hearing justice misconceived or overlooked material evidence. *Id.; Hassett v. State,* 899 A.2d 430, 433 (R.I.2006). This Court, however, will review *de novo* any determination pertaining to an issue concerning a defendant's constitutional rights. *Hassett,* 899 A.2d at 433; *Powers,* 734 A.2d at 514.

### B. Knowing, Voluntary, and Intelligent Nature of the Plea

■■■ Rodrigues argues that her conviction should be vacated because the plea colloquy was so riddled with errors that her guilty plea was neither knowing, voluntary, nor intelligent. Rule 11 codifies the manner in which a trial justice must conduct a plea proceeding in order to ensure constitutional compliance. Rule 11 provides:

"A defendant may plead not guilty, guilty or, with the consent of the court, nolo contendere. The court may refuse to accept a plea of guilty, and shall not accept such plea or a plea of nolo contendere without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and

filing fee, a proceeding under this chapter to secure relief."

3. The applicant also alleged that her conviction should be vacated because the hearing justice misconceived material evidence during the postconviction relief hearing. We are satisfied that this argument lacks merit.

4. Rodrigues is a citizen of the Dominican Republic, but had permanent resident status in the United States.

the consequences of the plea. If a defendant refuses to plead or if the court refuses to accept a plea of guilty or if a defendant corporation fails to appear, the court shall enter a plea of not guilty. The court shall not enter a judgment upon a plea of guilty or nolo contendere unless it is satisfied that there is a factual basis for the plea."

*See Moniz,* 933 A.2d at 695 (recognizing Superior Court must conduct an " 'on the record' " examination to determine defendant's voluntariness and knowledge); *State v. Frazar,* 822 A.2d 931, 935 (R.I.2003). It is well settled in this state that "[g]uilty pleas are valid only if voluntarily and intelligently entered, and the record must so affirmatively disclose" facts pertaining to those requirements. *State v. Figueroa,* 639 A.2d 495, 498 (R.I.1994).

■ Having reviewed the record, including the transcript of the plea, it is our opinion that the trial justice's colloquy was thorough and established that applicant's guilty plea was voluntary and made with knowledge and understanding of the charges against her. *See Tavarez v. State,* 826 A.2d 941, 943 (R.I.2003) (acknowledging proper colloquy when trial justice clearly explained the defendant's rights and inquired about the defendant's understanding of the plea form); *Frazar,* 822 A.2d at 936 (recognizing that plea colloquy demonstrated that the defendant understood his rights and voluntarily relinquished them). The justice who presided over the postconviction relief hearing reviewed the plea colloquy and determined that Rodrigues knew that she was pleading guilty. To support his conclusion, the hearing justice noted that Rodrigues had counsel and a Spanish language interpreter by her side and that she "expressly

acknowledged that she understood that the court was accepting her plea as a plea of guilty and nothing else."

The transcript from the plea proceeding is instructive. The trial justice had Rodrigues summarize the Spanish language plea form, which she had signed. Rodrigues indicated that she understood that she was waiving her rights to a trial, that she would serve one year in prison, with nine years suspended, with probation, and that she would go back to jail if she violated the terms and conditions of her term of probation. After this discussion, the prosecutor summarized the facts that the state was prepared to prove. Although there may have been some confusion at this point in the colloquy, this seasoned trial justice, with assistance from defense counsel, obviated Rodrigues' confusion and continued with the proceeding. Throughout the remainder of the colloquy, Rodrigues admitted no fewer than four times that she was guilty of the crimes set forth in the criminal information.[5] When Rodrigues again appeared confused, the trial justice stopped his line of questioning to make sure that applicant understood the question being asked.

"THE DEFENDANT: I did deliver it. I know I did it.

"THE COURT: In other words, you knew that what you were involved in was heroin and cocaine, is that so?

"THE DEFENDANT: That if I knew? I have to say yes.

"THE COURT: *Well you don't have to [say yes] if it's not so.*

"THE DEFENDANT: Yes, I knew what I was passing out." (Emphasis added.)

---

5. Rodrigues stated, "I'm admitting that I delivered this." Upon further inquiry, she acknowledged again, "Yes, I did deliver it."

Subsequently, she stated again, "I did deliver it. I know I did it." Later, she said yet again, "Yes, I knew what I was passing out."

Additionally, the trial justice specifically declared that Rodrigues voluntarily submitted to the plea and waived her rights.

"THE COURT: Now, Ms. Rodrigues, I'm going to make a determination that you are waiving your right to a trial and also the other rights that you have such as presumption of innocence, privilege against self-incrimination, *knowingly, voluntarily, and understandingly,* and I base that finding on your responses to me, the representation that you read and discussed with the interpreter the Spanish version of the request to enter your guilty plea, and the confirmation by the interpreter taht [*sic*] she read that form to you. Do you understand what I just said?

"THE DEFENDANT: Yes.

"THE COURT: Do you have any fault with any findings?

"THE DEFENDANT: No, sir." (Emphasis added.)

■ This Court "shall not vacate a plea unless the record viewed in its totality discloses no facts that could have satisfied the trial justice that a factual basis existed for a defendant's plea." *Frazar,* 822 A.2d at 935–36 (quoting *State v. Feng,* 421 A.2d 1258, 1269 (R.I.1980)). In the case at bar, the trial justice conducted an appropriate plea colloquy in accordance with Rule 11, and there is no basis for us to vacate applicant's guilty plea based on allegations of constitutional error.

Additionally, it makes no difference that applicant's plea was changed to a plea of guilty based on the trial justice's refusal to accept a plea of *nolo contendere.* Defense counsel testified at the postconviction relief hearing that she discussed with Rodrigues that a plea of *nolo contendere* and a guilty plea were essentially the same thing. It is well settled in this state that, "[a] plea of nolo contendere is the substantive equivalent of a guilty plea * * *."

*LaChappelle v. State,* 686 A.2d 924, 927 (R.I.1996) (quoting *Figueroa,* 639 A.2d at 498); *see also Armenakes v. State,* 821 A.2d 239, 246 (R.I.2003) (noting that the Court's concern lies not with the categorization of the plea, but rather with its consequences, and that the consequences of a plea of guilty and *nolo contendere* are the same).

## C. Ineffective Assistance of Counsel

■ Rodrigues additionally contends that her conviction should be vacated because she received ineffective assistance of counsel. "This Court has adopted the standard announced by the United States Supreme Court in *Strickland v. Washington,* [466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 * * * (1984)] when generally reviewing claims of ineffective assistance of counsel." *Powers,* 734 A.2d at 521–22 (quoting *LaChappelle,* 686 A.2d at 926). The *Strickland* standard requires that this Court conduct a two-part test:

"First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Powers,* 734 A.2d at 522 (quoting *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052).

The Court will reject an allegation of ineffective assistance of counsel "unless a defendant can demonstrate that counsel's 'advice was not within the range of competence demanded of attorneys in criminal cases' * * *." *Moniz,* 933 A.2d at 697 (quoting *Miguel v. State,* 774 A.2d 19, 22 (R.I.2001)).

In the case at bar, Rodrigues argues that her attorney failed to investigate the case and failed to review discovery, including a videotape of the alleged crime, evidence that applicant asserts would highlight potentially exculpatory facts. Additionally, Rodrigues alleges that she received ineffective assistance of counsel because she was not informed about potential immigration consequences attendant to the plea. We address each argument in turn.

### 1. Failure to Investigate and Review Discovery and Evidence

■ The applicant contends that her attorney provided ineffective assistance of counsel for failing to adequately investigate her case, failing to obtain and review discovery documents, and failing to view a videotape of the drug deal. Defense counsel testified during the postconviction relief hearing, relying on both her memory and her case file notes. She stated that she entered an appearance for Rodrigues on March 14, 1994, and hand-delivered a motion for discovery to the prosecution that day. She testified that she had an investigator and interpreter visit Rodrigues in prison and that she met with Rodrigues—at least once with an interpreter—several times before the plea proceeding. Defense counsel admitted that she never received discovery, nor did she view the videotape of the transaction.[6] She also testified that she was familiar with the case and the background facts because Rodrigues's arrest was one of a number of cases that her office handled involving an informant, Cesar Moreno, and the undercover officer in the case. She testified about the strength of the state's case, articulating that, "I had cross-examined [this officer] many times, so I had some idea of

how credible a witness he might be. Ordinarily—a case involving a hand-to-hand delivery to a police officer is much stronger for the prosecution * * *." Defense counsel also noted that Rodrigues was not interested in going to trial and that she had been in prison since November 1993.

Rodrigues also testified. She stated that she remembered meeting with her lawyer only once, on the morning of the plea, and that it was the investigator, not defense counsel, who informed her about the plea bargain.

The hearing justice rejected Rodrigues's argument about ineffective assistance of counsel. As for the credibility of the witnesses, he found that defense counsel testified "convincingly" and that Rodrigues testified to a "less certain" degree. Although he noted that counsel perhaps should have spent more time with Rodrigues, he was satisfied that she was sufficiently familiar with the case and was cognizant of the credibility of the state's witnesses. The hearing justice found that Rodrigues desired that this ordeal conclude quickly, and that "[t]he plea bargain struck by her attorney made her eligible for parole consideration in a very short period of time."

It is our opinion that Rodrigues was provided with effective counsel. Defense counsel clearly was aware of the strength of the state's evidence and the undercover police officer's reputation for integrity and the likelihood that he would make an effective witness for the state. Defense counsel also was familiar with the facts surrounding applicant's case. Although only two people including Rodrigues, were arrested on the evening of November 6, 1993, applicant's arrest was just one of many arrests stemming from a large undercover opera-

---

**6.** We were informed at oral argument that the videotape has not been produced, and may be lost.

tion that was handled by defense counsel's office.

Additionally, defense counsel's failure to review any discovery in this case did not amount to constitutionally deficient representation. There was a criminal information package, in which voluminous material about applicant's case was produced *ab initio*, including inventory sheets, fingerprint evidence, and statements from the police witnesses. The applicant has failed to point to any other material—save for the lost videotape—that was not provided and wholly has failed to demonstrate that such phantom proof would have influenced her decision to plead guilty.

Although defense counsel did not evaluate the allegedly exculpatory videotape of the transaction, we are satisfied that this did not prejudice Rodrigues, who admitted in open court, numerous times, that she was guilty of the charges. In *LaChappelle*, 686 A.2d at 927, this Court denied the defendant's allegations of ineffective assistance of counsel for failure to investigate. In that case, counsel failed to interview witnesses and also neglected to obtain a medical report that allegedly contained exculpatory evidence. *Id.* We noted that the report was not exculpatory, and we also noted that counsel's failure to interview witnesses was not inappropriate, particularly in light of the defendant's own statements to police. *Id.* Here, although counsel did not review the tape, which applicant suggests may contain evidence suggesting that applicant did not know she was delivering drugs, Rodrigues admitted in court that she knew what she was doing and knew what she was "passing out." We are satisfied that failure to review the videotape, which apparently has disap-

peared, did not amount to ineffective assistance of counsel.

Furthermore, it has not escaped our attention that the experienced and respected attorney who served as defense counsel was able to secure a favorable disposition; Rodrigues was faced with the potential for a much longer sentence than the one-year term she served. This Court previously has held that a lawyer's performance in advising a client to enter a plea involving a shorter sentence than the client otherwise might have received is not ineffective assistance of counsel, such that the client's constitutional rights have been violated. *See, e.g., Pelletier*, 966 A.2d at 1241–42 (counsel's decision to suggest that the applicant plea *nolo contendere* rather than face a potentially long jail sentence was not constitutionally ineffective); *Gonder v. State*, 935 A.2d 82, 88 (R.I.2007) (acknowledging that, if the defendant did not follow advice of counsel and accept the plea, the defendant ran the risk of receiving a much more serve sentence, and thus, counsel's performance was not deficient); *Hassett*, 899 A.2d at 437 (noting that because there was a strong possibility that the defendant may have received a more severe sentence had he not followed counsel's advice to accept a plea, the defendant could not demonstrate prejudice by counsel's allegedly deficient performance).

### 2. Immigration Consequences

Finally, applicant argues that she received ineffective assistance of counsel because she was not informed that her guilty plea could result in deportation from the United States.

 The applicant relies on an amendment (P.L.2000, ch. 501, § 1) to G.L.1956 § 12–12–22,[7] which requires that before

---

7. General Laws 1956 § 12–12–22, as amended by P.L.2000, ch. 501, § 1, the notice requirement provides:

"(b) Prior to accepting a plea of guilty or nolo contendere in the district or superior court, the court shall inform the defendant

accepting a guilty plea, the trial justice must notify a defendant that if he or she is not a citizen, the plea may have immigration consequences including deportation. *See Tavarez*, 826 A.2d at 944 (holding same for plea of *nolo contendere*). The amendment took effect on July 20, 2000—more than six years after applicant's plea. This Court consistently has declared that " 'statutes *and their amendments* are applied prospectively,' " absent " 'clear, strong language, or by necessary implication that the Legislature intended' a statute to have retroactive application * * *." *Ducally v. State*, 809 A.2d 472, 474 (R.I. 2002) (quoting *Wilkinson v. State Crime Laboratory Commission*, 788 A.2d 1129, 1140, 1141 (R.I.2002)). We already have held that the amendment to § 12–12–22 does not apply retroactively; in fact, the amendment specifically provides that it did not take effect until July 20, 2000. *Moniz*, 933 A.2d at 697; *Ducally*, 809 A.2d at 474–75.

Applying the law as it existed before the amendment, this Court has held that a defendant need be apprised only of the direct consequences of a plea, which do not include deportation. *See Moniz*, 933 A.2d at 697; *Tavarez*, 826 A.2d at 944; *Figueroa*, 639 A.2d at 499. "The possibility of deportation is only a collateral consequence [of a plea] because that sanction is controlled by an agency which operates beyond the direct authority of the trial [justice]." *Ducally*, 809 A.2d at 474 (quoting *State v. Desir*, 766 A.2d 374, 376 (R.I. 2001)).

Additionally, and conclusively, applicant should not be heard to contend that she did not receive notice of the immigration consequences. Before she pleaded, she admitted to the trial justice that she read and understood the Spanish language version of the plea form. The Spanish language plea form clearly warns the defendant about possible immigration consequences that can result from the plea.[8] *See Figueroa*, 639 A.2d at 499 (recognizing that the applicant received notice from the plea form, even though such notice was not required).

Because neither counsel, nor for that matter the trial justice, was required to inform the applicant about the possible immigration consequences of her plea, the applicant's second allegation of ineffective assistance of counsel is denied. *Ducally*, 809 A.2d at 475–76. Defense counsel's actions in this case were not constitutionally deficient.

### Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court. The applicant's appeal is denied and dismissed; the record shall be remanded to the Superior Court.

that if he or she is not a citizen of the United States, a plea of guilty or nolo contendere may have immigration consequences, including deportation * * *.

"(c) If the court fails to so inform the defendant as required by this section, and the defendant later shows that his plea and conviction may have immigration consequences, the defendant shall be entitled, upon a proper petition for post-conviction relief, to have the plea vacated."

8. The form provided: "Su alegación de Nolo Contendere o Culpable hoy, puede resultar en una forma de acción por el Departmento de Immigración la cual pueda afectar su posición en los Estados Unidos." This translates roughly as follows: "Your plea of Nolo Contendere or Guilty today may result in an action by the Department of Immigration that could affect your status in the United States."