Eric NEUFVILLE

v.

STATE of Rhode Island.

No. 2009–107–Appeal.

Supreme Court of Rhode Island.

Feb. 4, 2011.

---

George J. West, Esq., Providence, for Petitioner.

Christopher R. Bush, Department of Attorney General, for Respondent.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Justice GOLDBERG, for the Court.

This case came before the Supreme Court on October 27, 2010, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. Eric Neufville (Neufville or applicant) appeals from a Superior Court judgment denying his application for postconviction relief. The applicant alleges that he received ineffective assistance of counsel and that, but for this failed representation, he would not have entered pleas of *nolo contendere* to the felony crimes set forth in two separate criminal informations. After reviewing the memoranda submitted by the parties and the arguments of counsel, we are satisfied that cause has not been shown; thus, the appeal may be decided at this time. We affirm the judgment of the Superior Court.

## Facts and Travel

In May 2004, applicant entered pleas of *nolo contendere* to the crimes of assault with intent to commit robbery, felony assault (two counts) and possession of a firearm without a license; the offenses occurred in February 2003. During the same proceeding, Neufville also entered pleas to breaking and entering and assault committed in July 2003. The trial justice sentenced Neufville to a total of twenty years at the Adult Correctional Institutions, with three and one-half years to serve for the February 2003 crimes and an additional term of sixteen years, with imprisonment of two years, for the July 2003 offenses.[1] All sentences were to run concurrently.

In May 2005, Neufville filed this action for postconviction relief, claiming that he had received ineffective assistance of counsel. He alleged in Superior Court and again before this Court that after his trial attorney told him that he had no defense to the charges, he failed to investigate the facts of his case, neglected to file any pretrial motions, and otherwise failed to prepare for trial. The applicant further alleged that counsel did not explain the immigration consequences of these convictions. The applicant was born in Liberia in February 1983, but has lived in the

---

1. The applicant also was charged with one count of conspiracy and three counts of use of a firearm while committing a crime of violence, which all were dismissed in consideration of his pleas.

United States since he was two-and-a-half years old. According to Neufville, at the time of the pleas, his visa for temporary-protection status had expired, rendering his immigration status questionable.

Neufville contends that as a result of his counsel's failure to provide effective representation, his pleas neither were knowing nor voluntary; he adds that but for this negligent representation, he would not have pleaded to these charges. After hearing testimony from both applicant and his trial attorney, the trial justice denied the application for postconviction relief. Neufville appealed to this Court in April 2009.

Additional facts will be supplied as necessary.

## Standard of Review

■ Rhode Island's postconviction remedy is available to any person who has been convicted of a crime and who alleges, *inter alia,* that the conviction or sentence "was in violation of the constitution of the United States or the constitution or laws of this state[.]" G.L.1956 § 10–9.1–1(a)(1); *Rodrigues v. State,* 985 A.2d 311, 313 (R.I. 2009). When passing on an application for postconviction relief, this Court accords great deference to the factual determinations of the Superior Court hearing justice. *Rodrigues,* 985 A.2d at 313 (citing *Moniz v. State,* 933 A.2d 691, 694 (R.I.2007)). We "will uphold a postconviction relief decision absent clear error or a determination that the hearing justice misconceived or overlooked material evidence." *Id.* When a postconviction relief decision involves "questions of fact or mixed questions of law and fact pertaining to an alleged violation of an applicant's constitutional rights[,]" we review those issues *de novo. Hazard v. State,* 968 A.2d 886, 891 (R.I. 2009) (quoting *Azevedo v. State,* 945 A.2d 335, 337 (R.I.2008)).

## Analysis

■ "This Court has adopted the standard announced by the United States Supreme Court in *Strickland v. Washington,* [466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)] when generally reviewing claims of ineffective assistance of counsel." *Rodrigues,* 985 A.2d at 315 (quoting *Powers v. State,* 734 A.2d 508, 521 (R.I.1999)). Under *Strickland,* when confronted with a claim that a criminal defendant received ineffective assistance of counsel, the Court must conduct a two-part test. "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Powers,* 734 A.2d at 522 (quoting *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052). In looking at this first part, we have held that "[t]he Court will reject an allegation of ineffective assistance of counsel 'unless a defendant can demonstrate that counsel's advice was not within the range of competence demanded of attorneys in criminal cases * * *.' " *Rodrigues,* 985 A.2d at 315 (quoting *Moniz,* 933 A.2d at 697). Further, we have held that the first part "must be assessed in view of the totality of the circumstances" with a strong presumption that counsel's conduct falls within the permissible range of assistance. *Hazard,* 968 A.2d at 892 (citing *Heath v. Vose,* 747 A.2d 475, 478 (R.I.2000); and *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052).

■ "Second, the defendant must show that the deficient performance prejudiced the defense." *Powers,* 734 A.2d at 522 (quoting *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052). "When evaluating a claim for ineffective assistance of counsel in a plea situation, the defendant must demonstrate a reasonable probability that but for coun-

sel's errors, he or she would not have pleaded guilty and would have insisted on going to trial" and, importantly, that the outcome of the trial would have been different. *State v. Figueroa,* 639 A.2d 495, 500 (R.I.1994) (citing *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)).

Here, Neufville has alleged that his trial attorney's performance was deficient because counsel failed to conduct discovery, interview witnesses, file motions, or meet with him often enough. Additionally, applicant contends that his trial attorney failed to accurately and clearly advise him of the immigration consequences of pleading *nolo contendere.* We shall address these arguments *seriatim.*

## I

## Failure to Investigate, Prepare for Trial and Review Evidence

■ Both Neufville and his trial attorney testified at the postconviction relief hearing. Neufville cited a number of alleged deficiencies in counsel's performance. He testified that his attorney came to meet with him less than ten times; he added that the meetings generally lasted five to ten minutes. During those conferences, Neufville alleges that he provided counsel with the names of witnesses, none of whom was interviewed in advance of trial, despite Neufville's assertion that he told his lawyer he was innocent.

In contrast, counsel testified that Neufville never disclosed any potential witnesses and refused to "divulg[e] the identity of any other individuals involved" in the alleged offenses. Defense counsel insisted

that had he been provided with the names of potential witnesses, he would have sent an investigator to speak with them because this was his practice in every case.

Defense counsel also testified that, although Neufville told him that he "didn't do it," his client failed to provide him with any information that would help him formulate a defense.[2] According to counsel, applicant believed that the witnesses would not appear and testify against him, and therefore refused to accept an offer of five years to serve. It was counsel's opinion that if he could reach a plea agreement with the state for less than five years in prison, Neufville would accept the state's offer. On the day of the trial, when the state's witnesses did appear, counsel testified that Neufville "had to make the difficult choice" and that he decided to accept the plea offer of three and one-half years to serve.

The trial justice reviewed the evidence and declared that applicant had failed to prove his allegation of ineffective assistance of counsel. Finding that defense counsel's testimony was more credible than applicant's, the trial justice was satisfied that counsel was not provided with the names of any witnesses by his client. Although he noted that the attorney-client conferences were of brief duration, in light of the fact that Neufville failed to offer any information that might assist his defense, the trial justice found that the brevity of these meetings was "understandable." Addressing the contention that counsel did not seek discovery, the trial justice noted that defense counsel had been provided with the criminal-information package. Lastly, the trial justice concluded that

2. Although Neufville admitted to the charges in May 2004, he testified at the postconviction relief hearing that he was not guilty of the crimes, that he had told his attorney what really had happened—that in one instance a

gun was pulled on him and in another instance he was not the individual who committed the breaking and entering—and that he had lied about this during his plea because he felt he was "forced" to do so.

Neufville had failed to point to any exculpatory evidence that defense counsel should have uncovered in advance of trial.

■ After a careful examination of the record, it is our opinion that Neufville has not overcome the strong presumption that counsel's performance fell within the permissible range of assistance. *See Hazard,* 968 A.2d at 892 (citing *Heath,* 747 A.2d at 478). The trial justice found defense counsel's testimony to be credible, and we perceive no basis for disagreeing with this finding. Additionally, although counsel has a duty to investigate his client's case, when the only information provided by the client consists of "I didn't do it," we cannot say that counsel has been provided with any facts to investigate or otherwise employ as a defense. *See Hazard,* 968 A.2d at 893 (where we held "[i]n view of the totality of the circumstances, we agree with the hearing justice's conclusion that [the trial attorney] was not provided with enough details to investigate the [issue] before trial"); *see also Delahunt v. State,* 440 A.2d 133, 136 (R.I.1982) ("[c]ounsel can hardly be expected to interview alibi witnesses of whom he was unaware" because his client failed to notify him of any potential alibi witnesses).

We also reject applicant's contentions that counsel's failure to file certain pretrial motions amounted to ineffective assistance of counsel. *See Rodrigues,* 985 A.2d at 316–17 (in which the record shows that counsel had a complete criminal information package, was aware of the strength of the state's evidence and the accused did not point to any exculpatory evidence that would have affected her plea, counsel's failure to seek discovery did not amount to constitutionally deficient representation).

## II

## Immigration Consequences

■ Neufville next contends that his trial attorney failed to advise him of any potential immigration consequences of his pleas. In a recent opinion, the United States Supreme Court addressed the perils facing noncitizens who are accused of crimes. The Court held that "deportation or removal * * * is now virtually inevitable for a vast number of noncitizens convicted of crimes" and that, to provide effective assistance of counsel, "counsel must inform her client whether his plea carries a risk of deportation." *Padilla v. Kentucky,* — U.S. ——, 130 S.Ct. 1473, 1478, 1486, 176 L.Ed.2d 284 (2010). The Supreme Court held that criminal defense attorneys are responsible for affirmatively providing at least some immigration advice to noncitizen clients:

> "The landscape of federal immigration law has changed dramatically over the last 90 years. While once there was only a narrow class of deportable offenses and judges wielded broad discretionary authority to prevent deportation, immigration reforms over time have expanded the class of deportable offenses and limited the authority of judges to alleviate the harsh consequences of deportation." *Id.* at 1478.

Specifically, the Court acknowledged that:

> "Immigration law can be complex, and it is a legal specialty of its own. * * * There will * * * undoubtedly be numerous situations in which the deportation consequences of a particular plea are unclear or uncertain. * * * When the law is not succinct and straightforward * * * a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. But when the deportation consequence is truly clear * * * the duty to give correct advice is equally clear." *Id.* at 1483.

■ In addition to the advice noncitizen defendants are entitled to receive in light of *Padilla,* we further note the statutory protections afforded to criminal defendants in this state's tribunals. In accordance with G.L.1956 § 12–12–22,[3] before accepting a plea of *nolo contendere,* the trial justice must inform an alien defendant of any possible immigration consequences of the conviction.[4] In *Machado v. State,* 839 A.2d 509, 513 (R.I. 2003), we held that "neither a generalized reference to potential immigration consequences nor an advisement of deportation alone gives adequate notice to an alien defendant of the possibility of exclusion or denial of naturalization."

Turning to the case on appeal, the plea agreement form that Neufville executed prior to entering his pleas stated in bold uppercase print:

"I UNDERSTAND THAT IF I AM A RESIDENT ALIEN, A SENTENCE IMPOSED AS A RESULT OF MY PLEA MAY RESULT IN DEPORTATION PROCEEDINGS OVER WHICH THIS COURT HAS NO CONTROL." [5]

Further, although applicant insisted that his attorney never advised him of the consequences of a plea, he acknowledged knowing that he probably would be deported upon conviction and admitted that the trial justice had informed him of the possi

ble consequences of a plea during the plea colloquy. Moreover, counsel testified that he and the client had gone over the fact that the pleas "may very well impact on his immigration status." Counsel stated that applicant was well aware of the potential for deportation.

Mindful of the trial justice's credibility determinations, and having reviewed the record as a whole, we are of the opinion that applicant has failed to sustain his burden of proof. The trial justice found that applicant entered into pleas of *nolo contendere* to serious felony crimes with full knowledge of the potential for deportation. The record discloses that the trial justice reviewed the explicit immigration consequences with Neufville, and the plea forms that applicant signed contained specific warnings about deportation, in accordance with § 12–12–22. This evidence is uncontroverted.

■ Before this Court, applicant suggests that *Padilla* requires a criminal defense attorney to inform the defendant that his or her deportation is "presumptively mandatory" and that failure to do so falls below the acceptable standard of effective assistance of counsel. The applicant contends that defense counsel was "under an obligation to make clear that automatic deportation would be the result of entering *nolo* pleas." We disagree with

---

3. General Laws 1956 § 12–12–22(b) provides in pertinent part:

"Prior to accepting a plea of guilty or nolo contendere * * * the court shall inform the defendant that if he or she is not a citizen of the United States, a plea of guilty or nolo contendere may have immigration consequences, including deportation, exclusion of admission to the United States, or denial of naturalization pursuant to the laws of the United States."

4. Specifically, the trial justice must inform the defendant of the possibility of deportation,

exclusion of admission to the United States and denial of naturalization, if the accused elects to plead.

5. We note that the current plea agreement form states:

"I UNDERSTAND THAT IF I AM A RESIDENT ALIEN, A SENTENCE IMPOSED AS A RESULT OF MY PLEA MAY RESULT IN DEPORTATION, EXCLUSION OF ADMISSION TO THE UNITED STATES, AND/OR DENIAL OF NATURALIZATION * * *."

this contention. Counsel is not required to inform their clients that they *will* be deported, but rather that a defendant's "plea would make [the defendant] eligible for deportation." *Padilla,* 130 S.Ct. at 1483.

Given the multiple layers of advice Neufville received, plus his acknowledgement that he knew he could be deported, we are satisfied that his trial attorney provided him adequate counsel about the possibility of immigration consequences.

## III

### Prejudice Prong

■ Because of our conclusion that counsel's performance was "within the range of competence demanded of attorneys in criminal cases," *Rodrigues,* 985 A.2d at 315 (quoting *Moniz,* 933 A.2d at 697), we need not undertake the second part of the *Strickland* analysis, whether counsel's deficient performance prejudiced the defense in this case. *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. We pause to note, however, that in the context of a negotiated plea, to prevail on an allegation of ineffective assistance of counsel, the defendant must show that he would have insisted on going to trial and that the outcome of that trial would have been different. *See Hill,* 474 U.S. at 59, 106 S.Ct. 366; *Figueroa,* 639 A.2d at 500. We have held that when counsel has secured a shorter sentence than what the defendant could have received had he gone to trial, the defendant has an almost insurmountable burden to establish prejudice. *Rodrigues,* 985 A.2d at 317. *See Gonder v. State,* 935 A.2d 82, 88 (R.I.2007); *Hassett v. State,* 899 A.2d 430, 437 (R.I.2006).

Neufville was sentenced to twenty years, with three and one-half years to serve in prison, on all counts. His sentences ran concurrently. In consideration of his pleas, three counts of using a firearm while committing a crime of violence were dismissed. A conviction of a single count of committing a crime of violence while armed with a gun carries with it a *mandatory* ten-year sentence, to run *consecutively* to any other sentence imposed. G.L. 1956 § 11–47–3.2. We thus are satisfied that had Neufville proceeded to trial, he ran the risk of receiving a longer sentence than was imposed and therefore has failed to establish prejudice because of his counsel's alleged ineffective assistance.

### Conclusion

For the foregoing reasons, we affirm the judgment denying postconviction relief. The papers may be remanded to the Superior Court.