DECISION
Before this Court is the application of David Coutu (Coutu or Petitioner) for Post-Conviction Relief. Coutu contends that he was denied his right to effective assistance of counsel prior to entering a plea of nolo contendere to two counts of breaking and entering and once count of larceny under $500. This plea, entered in l998, is now being used as part of a deportation proceeding.
 Facts and Travel[1]
On February 20, l998, East Providence police responded to a reported breaking and entering at 500 Taunton Avenue. As the investigation unfolded, police received evidence that a Peter Moniz was involved in the breaking and entering. Moniz voluntarily accompanied police to the station, was read his rights and stated that he understood them. Moniz admitted involvement and told police that Coutu was also involved. According to Moniz, Coutu had earlier stolen a set of keys for the apartment complex and used them to enter the victim's apartment. Both Moniz and Coutu entered the apartment and divided the money received from pawning the stolen items. Coutu was arrested on a Family Court warrant and admitted involvement to the police but refused to make a statement. *Page 2 
In addition, a second witness, Ms. Berta Davis, a resident of the apartment complex gave a statement to the police. She stated that both defendants were at her apartment after the larceny and showed her the stolen items as well as admitting that they had broken into another house nearby. Ms. Davis knew Moniz but identified the second individual only by his name "Dave". However, she later was able to identify Coutu from a photo lineup.
Both Moniz and Coutu plead to the charges on June l8, l998 and received a five year suspended sentence on two counts of breaking and entering, one year suspended sentence to a single count of larceny under $500 and in consideration of these pleas two counts of conspiracy were dismissed as to both defendants.
Ten years late, Coutu filed for Post-Conviction Relief claiming ineffective assistance of counsel for failure to advise him of the immigration consequences of his plea.
 Ineffective Assistance of Counsel Claim Constitutional Standard
Rhode Island's post-conviction relief statute provides for relief for any person convicted of a crime who claims "that the conviction . . . was in violation of the constitution of the United States or the constitution or laws of this state." G.L. l956 § 10-9.1-1(a)(1). "An application may be filed at any time." G.L. 1956 § 10-9.l-3.
Claims of ineffective assistance of counsel are based on theSixth Amendment of the United States Constitution, as applied to the states under the Due Process Clause of the Fourteenth Amendment of the United States Constitution. The Sixth Amendment of the United States Constitution provides in part: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." The same is found in Article 1 section 10 of the Rhode Island Constitution. *Page 3 
The United States Supreme Court, on numerous occasions, has defined the meaning of the "assistance of counsel" clause. In Powell v. Stateof Alabama, 287 U.S. 45, 58 (1932), the Court stated that "assistance of counsel" was "zealous and active" as opposed to "pro forma". In overturning the convictions of the defendants, the Court held: "Under the circumstances disclosed, we hold that defendants were not accorded the right of counsel in any substantial sense." Later, the Court explicitly "recognized that the right to counsel is the right to effective assistance of counsel." McMann v. Richardson,397 U.S. 759, 771 n. 14 (1970).
However, the most explicit statement of the Sixth Amendment's guarantee of effective assistance of counsel is found inStrickland v. Washington, 466 U.S. 668 (1984). InStrickland, the Supreme Court explained that the purpose of the requirement of effective assistance of counsel is to "ensure a fair trial." Id. at 686. The Court added that the requirement of effective assistance of counsel imposes ". . .the overarching duty to advocate the defendant's cause and the particular duty to consult with the defendant on important decisions . . ." Id. at 688.
A "defendant [who] complains of the ineffective assistance of counsel . . . must show that counsel's representation fell below an objective standard of reasonableness." Id. To show that counsel failed to meet this objective standard of reasonableness, the Strickland
Court established a two-pronged standard that requires the petitioner to show that trial counsel's performance was deficient and that the deficiency prejudiced the defendant. Id. at 687. As the Court stated:
 "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment.
 Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. *Page 4 
However, in addition to this two-pronged test, "counsel is strongly presumed to have rendered adequate assistance." Id. at 690.
In order to satisfy the deficiency prong, a defendant "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id. at 690. As guides to determining reasonableness, the Strickland Court referred to the "prevailing norms of practice as reflected in American Bar Association standards. . . ." Id. at 688.
If petitioner satisfies the deficiency prong, he must then address the prejudice requirement identified by the Strickland
Court. 466 U.S. at 687. To satisfy the prejudice prong, "defendant must show that there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Brown v. Moran,535 A.2d 180, 182 (R.I. 1987) (quoting Strickland,466 U.S. at 694). The Rhode Island Supreme Court recently affirmed this standard in Larngar v. Wall stating that "prejudice exists if there is a reasonable probability that, absent counsel's deficient performance, the result of the proceeding would be different."918 A.2d 850, 856 (R.I. 2007) (quoting State v. Figueroa,639 A.2d 495, 500 (R.I. 1994). The United States Supreme Court has addressed the prejudice standard in a post-conviction relief case pressing an ineffective assistance of counsel claim arising out of the plea process. Hill v. Lockhart, 474 U.S. 52, 57 (1985). In that case, the Court stated, "The second, or `prejudice' requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the `prejudice' requirement, the [petitioner] must show that there is a reasonable probability that, but *Page 5 
for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59.
The Rhode Island Supreme Court explicitly adopted theStrickland standard in Heath v. Vose,747 A.2d 475, 478 (R.I. 2000). Recently, our Supreme Court stated that it "will reject an allegation of ineffective assistance of counsel `unless the attorney's representation was so lacking that the trial has become a farce and a mockery of justice.'" Moniz v. State,933 A.2d 691, 696 (R.I. 2007) (quoting State v. Dunn,726 A.2d 1142, 1146 n. 4 (R.I. 1999). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Heath,747 A.2d at 478 (quoting Strickland, 466 U.S. 686). Also, theHeath Court stated that this determination must be made "based on the totality of the omissions [allegedly] committed" by petitioner's attorney. Heath, 747 A.2d at 478.
 Collateral Consequences
The State have moved to dismiss the petition based upon the long standing doctrine of collateral consequences regarding immigration warnings. This widely held view can be summarized as a holding that "the possibility of deportation is only a collateral consequence [of a plea] because that sanction is controlled by an agency which operates beyond the direct authority of the trial [justice]." Ducally v. State,809 A.2d 472, 474 (R.I. 2002). The State bases its motion upon the law of this as well as most other states that have held that failure to advise a client about possible immigration consequences did not constitute ineffective assistance of counsel. However, the State's motion predates the recent decision of the United States Supreme *Page 6 
Court in the matter of Padilla v. Kentucky, S.Ct. ___, No. 08-651, 2010 WL 1222274, at 7 (March 31, 2010).[2]
In Padilla, the Court found that deportation consequences are not to be considered collateral due to the fact that they are often as significant to defendants as incarceration. Based upon this recent holding of the United States Supreme Court, the State's motion to dismiss is denied.
 Deficient Performance
The Court must determine if Petitioner's claim that his rights to effective assistance of counsel was violated in light of the decisions by the federal courts as well as our Supreme Court. In order for Petitioner to prevail, he must meet the standards of theStrickland Court by a fair preponderance of the evidence.Burke v. State, 925 A.2d 890, 892 (R.I. 2007) (quotingLarnger, 9l8 A.2d at 855).
In his petition, Couto, by affidavit alleges inter alia that:
 1-he was represented by the Public Defender's Office
 2-he does not recall the name of his attorney
 3-that there was no advisement from his attorney as to the immigration consequences flowing from the plea
 4-that the court incorrectly advised him as to the immigration consequences
A hearing was held on May l3, 2010. Since Petitioner is presently in immigration custody, his current counsel waived his appearance.
Only one witness testified at the hearing, Mark Bonn, who represented Petitioner as his 1998 plea. It should be noted that Mr. Bonn was not a member of the Public Defender's Office in l998 but entered as a private attorney for Coutu. No evidence was introduced as to whether Mr. Bonn was court appointed or privately retained. Bonn's testimony can be summarized as *Page 7 
follows: he acknowledged representing Coutu in l998 but, not surprisingly, has no recollection of the circumstances surrounding the plea. Since his file has been destroyed, he was unable to recall exactly what immigration advice he gave almost twelve years before. However, in answer to direct examination, he stated that in l998 he in fact had practiced in the area of immigration law and had been involved in approximately thirty hearings around the time of Coutu's plea. Although he admitted that he has not been involved in this area of law for years and therefore did not consider himself knowledgeable today he was conversant in l998. Attorney Bonn went on to testify that his usual practice, at that time, was to discuss the immigration consequences of a plea and to advise defendants that a plea may have an impact of their status. (emphasis added).
In his pleadings, Coutu maintained that counsel gave no advisement whatsoever regarding the immigration consequences of a plea to the charges in the information. However, a review of the court files reveals that this does not appear to be the case. Although not mentioned by either side at the hearing, the plea form itself contains a hand written note by Attorney Bonn under the listing of the rights that defendant was waiving. This note states simply "client advised of impact this pleamay have on his immigration status." (emphasis added). Petitioner is clearly incorrect in his pleadings that no advisement whatsoever was given regarding his immigration status. It appears that Attorney Bonn's testimony of his usual practice was in fact correct. Furthermore, before the court printed an immigration warning on the plea form and before the law mandated a warning by the court, counsel was raising immigration consequences with defendants.
However, Petitioner argues that this advice is ineffective and that the Padilla Court demands a warning that the plea wouldlead to his removal from the United States, any other wording would result in ineffective assistance of counsel underStrickland. (emphasis added). *Page 8 
The Court disagrees. Padilla clearly stands for the proposition that immigration consequences are not collateral matters under theStrickland ineffective assistance of counsel standard. It further holds that when "attorneys know that their clients facepossible exile from this country and separation from their families, they should not be encouraged to say nothing at all."Padilla v. Kentucky, 2010 WL 1222274 at *6. (emphasis added). As quoted above, Justice Stevens uses the word "possible" rather than "shall" when referring to immigration proceedings. In Padilla, the defendant was in fact given incorrect advice when he was told that he had been in the country so long that he need not worry about immigration consequences. In the instant case, Defendant was placed on notice by counsel that immigration issues were in fact a concern but agreed to enter the plea in spite of the warning. In addition, the Court issued the same warning, which it should be noted, it was not required to do in l998 and still the Defendant elected to proceed with the plea.
It is interesting to note the use of the words in the Rhode Island Statute regarding immigration warnings. First, the legislature requires the court to inform the defendant as follows: "each defendant shall be informed that if he or she is an alien in the United States, a plea of guilty or nolo contendere may affect his or her immigration status." G.L. 1956 § 12-12-22(a). (emphasis added). Next, that before "accepting a plea . . . The court shall inform the defendant that . . . a plea . . . may have immigration consequences." (emphasis added). Furthermore, our Supreme Court has held the intent of § 12-12-22 is "to place a defendant on sufficient notice of the potential immigration consequences of his or her plea . . ." Machado v. State, 839 A.2d 508, 5l3. (emphasis added).
The Court rejects Petitioner's contention that counsel failed to give any advice as to the immigration consequences of his plea. Counsel clearly advised Petitioner that the plea may *Page 9 
have immigration consequences and included that notation on the plea form that Petitioner assured the Court that he had read, signed and understood. (See Tr. p. 3.) The fact that counsel used the word "may" does not rise to the level of "errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by theSixth Amendment." Strickland Here, Defendant had sufficient notice of the potential immigration consequences. In fact, for approximately ten years after the acceptance of the plea Coutu remained free in the community before any action by immigration authorities adding further to the idea that deportation did not flow immediately from the sentence imposed. The Court cannot conclude that Coutu as sufficiently alleged that his council was constitutionally deficient. Padilla requires that counsel must inform a defendant whether a plea carries a risk of deportation. In the case at bar, counsel did, in fact, so advise.
 Prejudice
Since the Court has held that Petitioner has failed to meet the first prong of the Strickland test, it need not consider whether Defendant suffered prejudice which is the second prong underStrickland. However, it is interesting to note that at the hearing Petitioner alleged that the removal order was the prejudice that attached. However, as stated above, Strickland requires a "defendant to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Brown v. Moran,534 A.2d 180, 182 (R.I. 1987) (quoting Strickland,486 U.S. at 694). the United States Supreme Court has held that in order to satisfy the `prejudice' requirement the petitioner must show that there is a reasonable probability that, but for counsel's error, he would not have pleaded guilty and would have insisted on going to trial.Hill v. Lockhart, 474 U.S. 52, 59. *Page 10 
At not time during the hearing did Petitioner allege that, but for counsel's errors, he would have gone to trial. Coutu had been named by his co-defendant, made a statement to the police and been identified from a photo by an independent witness as a person in possession of the goods stolen from the apartment and had admitted the break in to her. It appears that Petitioner did not have an array of defenses at his disposal.
At the plea negotiations, the State offered a less than jail disposition perhaps in consideration of Coutu's young age and the fact that he was just waived into the adult system. If, however, he was found guilty after trial, he faced the likelihood of a jail sentence for the charge of breaking and entering. (see Sentencing Benchmarks, Benchmark 2.). Coutu appears to have made a choice to avoid jail, enter a plea, and deal with the immigration consequences later. His decision worked to his benefit, for a least ten years. It does not appear from the facts of the case, and Petitioner has not alleged anything to the contrary, that a trial would not have relieved him of his immigration problems but would have merely added a period of incarceration prior to his removal. The Court finds that Petitioner has failed to show prejudice.
 Deportation vs. Removal
Below the surface of many petitions for Post-Conviction Relief is the allegation that somehow the court, in warning defendants of the possibility of deportation, is misleading and confusing criminal defendants. In his Memorandum in Support of Application for Post-Conviction Relief (p. 1.), Petitioner advances this theory:
 ". . . the petitioner avers that the Immigration advisement as provided by the court was incorrect as it did not properly inform petitioner of the immigration consequences flowing from the underlying criminal plea. Significantly, the respondent was not in "deportation" but was placed in removal a proceeding (sic)" *Page 11 
The above is a reference to changes made to the immigration laws in the Anti-terrorism and Effective Death Penalty Act (AEDPA). As a result of this Act, deportation proceedings no longer apply to conviction which occurred after passage of this AEDPA. (See Petitioner's Memo, p. 1.). Petitioner's conviction was after passage of AEDPA.
Since Petitioner's plea was entered in l998, no immigration warning was required from the court because such consequences were considered collateral in nature. Tavares v. State, 826 A.2d 941 (R.I. 2003);Moniz v. State, 933 A.2d 691 (R.I. 2007).
However, on July 6, 2000, the Rhode Island General Assembly amended § 12-12-22 as follows:
 (b) Prior to accepting a plea of guilty or nolo contendere in the district or superior court, the court shall inform the defendant that if he or she is not a citizen of the United States, a plea of guilty or nolo contendere may have immigration consequences, including deportation, exclusion of admission to the United States, or denial of naturalization pursuant to the laws of the United States. . . ."
Furthermore, § 12-12-22 (c) provides that:
 "If the court fails to so inform the defendant as required by this section, and the defendant later shows that his plea and conviction may have immigration consequences, the defendant shall be entitled, upon a proper petition for post-conviction relief, to have the plea vacated. Absent a record that the court provided the advisement required by this section, the defendant shall be presumed not to have received the advisement."
Our Supreme Court had held that the mandate of § 12-12-22 must be substantially complied with and that a failure to convey the three very serious and specific immigration implications is reversible error.Machado v. State, 839 A.2d 509 (R.I. 2003). In Machado, the Court held: "The plan and clear language of 12-12-22 requires the court to inform a noncitizen defendant of "deportation, exclusion of admission to the United States, or denial of naturalization. . . ." *Page 12 
Therefore, it would see seem that Petitioner's position that a warning of "deportation" is incorrect under AEDPA and is grounds for post-conviction relief would render the State virtually incapable of having a non-citizen's plea upheld. If "deportation" is used, the conviction is reversed for non compliance under AEDPA. If "removal" is used, petitioner claims non compliance with Machado. If both "deportation" and "removal" is used, then defendant is confused by the court by being advised of two different immigration proceedings post AEDPA. (Petitioner's Memo. p. 2.)
The Court rejects any claim that Petitioner on one hand is unaware of the immigration consequences of a criminal plea while at the same time is so conversant with immigration law that he understands alleged differences between deportation proceedings and removal proceedings.
 Conclusion
For all of the above stated reasons, Petitioner's application for post-conviction relief is denied.
[1] The facts recited herein were obtained from the "police narrative" that formed the basis of probable cause for the criminal information filed in P2-l998-l974 AB.
[2] For a Rhode Island case that foreshadows Padilla, see the Superior Court decision in Brito-Batista v. State, PM 2004-3770.